LLEH, INC., et al., Plaintiffs,

v.

WICHITA COUNTY, TEXAS
Defendant.

No. CIV.A.7:00–CV–0042–R.

United States District Court,
N.D. Texas,
Wichita Falls Division.

Sept. 19, 2000.

Gerald Hopkins, Law Office of Gerald Hopkins, Santa Fe, NM, for Plaintiffs.

Douglas Lantz Baker, Wichita County Attorney'S Office, Wichita Falls, TX, for Defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

BUCHMEYER, Chief Judge.

In the fall of 1999, the Wichita County Commissioners' Court learned of Mr. William Essary's plans to open "Babes," a sexually oriented business, in Wichita County just outside the city limits of Wichita Falls, Texas.[1] In response, on December 6, 1999, the Commissioners' Court adopted new regulations governing sexually oriented businesses in the unincorporated areas of the County— i.e., the *Regulations For Sexually Oriented Businesses in the Unincorporated Areas of Wichita County, Texas* ("the Order").

On March 9, 2000, the Plaintiffs LLEH, Inc., d/b/a BABE's ("Babe's") and three Babe's employees— April Cooper, Anita Jackson, and Sarah Blackstock— filed suite to enjoin the enforcement of certain portions of the Order. A hearing on

Babe's motion for temporary injunction was held on April 25, 2000, at which time this Court considered only one of the restrictions in the Order, the so-called *"6 Foot Rule."*[2] At the conclusion of this hearing, the Court granted a temporary injunction against the enforcement of the 6 Foot Rule by Wichita County. The case was then tried on the merits on July 10, 2000. Pursuant to Rule 52(a) of the Federal Rules of Civil Procedure, the Court makes its findings of fact and conclusions of law as follows:

## FINDINGS OF FACT

1. Mrs. Pearl Carter ("Carter") owned 240 acres in Wichita County, on which her home is located. There is minimal development around her property. In fact, there is a large pasture across the road from her land. Next door to her home, Mrs. Carter's son and his family reside in another house that she owns. On the other side of Mrs. Carter's residence is a barn. The street running by Mrs. Carter's house from the highway to Wichita Falls first runs through a light industrial area, then by the Babe's building and her two houses, and then by single family residences widely set apart by the normal custom of rural family living. Also nearby, at the end of McKinney Street, is a state prison, the North Central Correctional Facility. In sum, this is certainly not a densely populated area, but instead, a very rural one.[3]

2. Mrs. Carter has been trying to sell parcels of her 240 acres of land since 1981. She sold the owner of Babe's, Mr. Essary ("Essary"), the property where Babe's is located for approximately $32,000. Mrs. Carter had previously operated a *liquor store* and an *antique/gift store* on the prop-

---

1. Essary had formed a corporation, "LLEH, Inc.," d/b/a "Babe's" for this purpose. He began the construction of Babe's in *June of 1999.*

2. The "6 Foot Rule" requires the nude dancer to be at least 6 feet from the edge of the stage, and it also requires the patrons of Babe's to

be at least 6 feet from the stage— so it is actually a 12 foot distance restriction.

3. Mrs. Carter's two houses are at least 865 feet from the residence of her nearest neighbor.

erty which she sold to Essary (knowing he wanted it for Babe's, a sexually oriented business).

3. Mrs. Carter's other land is still on the market for approximately $1500 per acre. When Carter inquired into the effect of Babe's on the valuation of her other property, she was advised by her appraiser that no decrease in value was to be expected. In fact, Mrs. Carter has since sold another piece of her land, subsequent to the opening of Babe's, for the market value that she has been seeking.

4. Essary purchased the land from Mrs. Carter because it was easily accessible to the freeway, it was outside of Wichita Falls city limits, and Wichita County did not have a sexually oriented business ("SOB") regulation. Essary also told Carter of his intentions to operate a SOB and she did not— and does not— have any objections. In fact, Mrs. Carter testified that she feels safer now because she is no longer out in the country by herself, and because she is friends with the dancers and other employees at Babe's.[4]

5. Construction on the physical facilities of "Babe's" commenced in June of 1999, and work was done on a regular basis until it was completed. During construction, a sign was not posted identifying the site as a future location of a sexually oriented business. When the true nature of the construction became known, opposition against the club began to mount; this included a visit from an irate County Commissioner who threatened Essary with physical violence.

6. "Babe's" opened for business on November 1, 1999, immediately following the completion of construction. At the time, it was the only adult cabaret in Wichita County.

7. Wichita County Commissioner's Court reviewed, *to some extent,* sexually oriented business studies from other governmental entities; they also heard testimony from individuals about the need to regulate sexually oriented business. Some people at these meetings were openly seeking ways *to close Babe's.*

8. Wichita County, acting under the authority of Texas Local Government Code, Chapter 243, enacted a sexually oriented business order on December 6, 1999 ("the Order"). *This was some six months after Essary began construction and one month after Babe's had opened for business.*

9. Babe's is a "BYOB" ("bring your own bottle") establishment; it does not sell alcoholic beverages and, therefore, it is exempt under the Texas Alcoholic Beverage Code ("TABC").

10. The term "partially nude" is not defined in the Order.

11. The evidence suggests that the Commissioner's Court did not understand or comprehend the difference between "stage" and "table" dancing at Babe's.

12. Section X of the Order requires employees to obtain an identification badge before they can perform. The Sheriff of Wichita County issues temporary badges immediately upon application, pending investigation into the applicant's criminal history and complete processing of the application. The Sheriff also requires badges for prospective dancers to audition, for transient "weekenders"[5] to work on Friday, Saturday, or Sunday nights, and for "headliners"[6] to appear on special occasions.

---

4. However, Mrs. Carter's son— whose family lives free in her second house— testified before the County Commissioners that he is opposed to Babe's.

5. The evidence shows that there is a contingent of dancers that travel from location to location. They may decide to work on a Saturday at a sexually oriented business in one town and then move on the following day to a club in another town.

6. The evidence established that businesses such as Babe's usually utilize "national acts" to bring in additional customers to their establishments. The "headliners" are booked by agents and contracted to different clubs on road schedules. Their schedules are often

13. The SOB club must obtain a permit before a dancer can audition for employment.

14. The Sheriff requires the applicant to sign a blanket release so he can obtain a complete criminal history from the Texas Department of Public Safety (DPS), including any felony convictions during the five-year period prior to application, any misdemeanor convictions within two years of the application, and any convictions for crimes other than for "disqualifying crimes" under the Order. However, no security measures are taken by the Sheriff to ensure the confidentiality of these criminal records after they are obtained from the DPS.

15. The Plaintiff corporation (LLEH, Inc.) applied for a sexually oriented business permit (SOBP) and for a contingent SOBP seeking time to recoup its investment should the SOBP be denied.

16. After a sixty day grace period, in February 2000 the Wichita County Sheriff's Department began enforcement of the Order. Numerous misdemeanor charges against Babe's dancers and managers—primarily for violation of the six foot buffer zone— were filed. However, some of the arrests were prompted by Plaintiffs in an attempt to gain standing in order to seek judicial review of the Order.

17. Wichita County Sheriff's Department officers never made an arrest on the premises of "Babe's," but instead allowed club employees and dancers one week in which to turn themselves in and to be "booked in & booked out."

18. An employee or employees of Babe's destroyed a video tape, which depicted a nude dancer violating "no touch" provisions of the Order as testified to by a Wichita County sheriff's deputy. However, the deputy did not arrest the alleged violators even though he witnessed the violations on the surveillance cameras.

19. Wichita County reduced the six foot dancer distance rule to a three foot rule and waived the 1500 foot location rule to allow the enterprise to remain at the current location until at least November 1, 2002.

20. The Wichita County Commissioner's Court is composed of five members, all voting, and any action taken by the Court must be by majority vote.

21. The only member of the Wichita County Commissioner's Court who was up for election during relevant times to the passage of the Order was Precinct One Commissioner Joe Miller, and he is running unopposed in the general election on November 7, 2000.

## CONCLUSIONS OF LAW

### I. APPLICABLE LAW

In the area of nude dancing under the First Amendment to the United States Constitution, the supreme court law is complicated by the fact that many of the opinions are plurality opinions, as opposed to majority opinions. See City of Erie v. Pap's A.M., 529 U.S. 277, 120 S.Ct. 1382, 146 L.Ed.2d 265 (2000); Barnes v. Glen Theatre, Inc., 501 U.S. 560, 111 S.Ct. 2456, 115 L.Ed.2d 504 (1991); City of Renton v. Playtime Theatres, Inc., 475 U.S. 41, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986); Young v. American Mini Theatres, Inc., 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976). However, there are a few principals that can be gathered in this area. First, nude dancing is protected under the First Amendment. See J & B Entertainment, Inc. v. City of Jackson, 152 F.3d 362, 369 (5th Cir.1998). Second, government action aimed at the content of the message is reviewed under strict scrutiny. See Texas v. Johnson, 491 U.S. 397, 109 S.Ct. 2533, 105 L.Ed.2d 342 (1989). Third, content-neutral regulations are subjected to inter-

tight, leaving little time for them to leave one location and arrive at the next before it is

time for them to perform again.

mediate scrutiny. *See J & B*, 152 F.3d at 369–71. There is little disagreement about these conclusions. Yet, there is a significant amount of dispute over which test should be used when evaluating government regulations under intermediate scrutiny.[7]

■■■■ While the opinions from the United States Supreme Court refer to the *O'Brien* test, *see Erie*, 529 U.S. at ——, 120 S.Ct. at 1391; *Barnes*, 501 U.S. at 570, 111 S.Ct. 2456, the Supreme Court has appeared to apply the traditional time, place, and manner restrictions test instead of the *O'Brien* test that it cites for the doctrine, *see id.; Renton*, 475 U.S. at 47, 106 S.Ct. 925. Commentators have noted that the distinction between the traditional time, place, and manner restrictions, *see e.g., Heffron v. International Society for Krishna Consciousness*, 452 U.S. 640, 101 S.Ct. 2559, 69 L.Ed.2d 298 (1981), and the incidental regulation line of cases, *see e.g., United States v. O'Brien*, 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968), has been blurred by recent Supreme Court opinions. *See generally* David S. Day, *The Hybridization of the Content–Neutral Standards for the Free Speech Clause*, 19 Ariz. St. L.J. 195 (1987). In fact, this has been recognized by the Supreme Court, *see Barnes*, 501 U.S. at 566, 111 S.Ct. 2456; *Clark*, 468 U.S. at 298, 104 S.Ct. 3065, as well as the United States Court of Appeals for the Eleventh Circuit, *see Lady J. Lingerie, Inc. v. City of Jacksonville*, 176 F.3d 1358, 1364 (11th Cir.1999). Relative to this opinion, *Renton* contains the elements of the modified *O'Brien* test that will be used for this analysis. *See J & B Entertainment, Inc. v. City of Jackson*, 152 F.3d 362 (5th Cir.1998). *See also Baby Dolls Topless Saloons, Inc., et. al. v. City of Dallas* (Findings of Fact and Conclusions of Law), (N.D.Tex.2000)(*"Baby Dolls"*). As stated by this Court in *Baby Dolls:*[8]

> Because erotic adult entertainment is marginally protected by the First Amendment, zoning ordinances designed to address the adverse secondary effects associated with such entertainment are subject to an intermediate level of constitutional scrutiny. *See City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 46, 106 S.Ct. 925, 928, 89 L.Ed.2d 29 (1986); *Young v. American Mini Theatres, Inc.*, 427 U.S. 50, 70, 96 S.Ct. 2440, 2452, 49 L.Ed.2d 310 (1976) ("it is manifest that society's interest in protecting this type of expression is of a wholly different, and lesser magnitude than the interest in untrammeled political debate."). The Supreme Court has declared that such a zoning ordinance is analyzed as a 'content-neutral' time, place, and manner regulation so long as it is justified without reference to the content of the regulated expression, is designed to serve a substantial governmental interest, and allows for reasonable alternative avenues of communication. *See Renton*, 475 U.S. at 49–50, 106 S.Ct. at 929–30. Under *Renton*, the government bears the burden of justifying [ . . . ] the regulation. *See J & B Entertainment*, 152 F.3d at 370 (citing *Renton*, 475 U.S. at 48, 106 S.Ct. 925); *SDJ*, 837 F.2d at 1273. However, the litigant challenging the regulation bears the burden of proving that the regulation does not allow for reasonable alternative avenues of communication because it denies him a reasonable opportunity to open and operate his business. *See Woodall v. City of El Paso*, 49 F.3d 1120 (5th Cir.1995).

*Baby Dolls* at —— —— (N.D.Tex.2000). Further,

---

7. While both parties agree that content-neutral regulations are reviewed under intermediate scrutiny, Plaintiffs and Defendant proffer different tests, both relying upon *O'Brien*. *See United States v. O'Brien*, 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968).

8. Because the law concerning this case is the same as in this Court's recent *Baby Dolls* Findings of Fact and Conclusions of Law, the legal framework is quoted below in this opinion.

Because the Ordinance is a content-neutral time, place, and manner regulation of protected expression, the City must also prove that the Ordinance is narrowly tailored to further a substantial interest. *See Renton*, 475 U.S. at 49–50, 106 S.Ct. at 929–30. In *SDJ*, the Fifth Circuit held that

> a city may establish its substantial interest in the regulation by compiling a record with evidence that it may be reasonably believed to be relevant to the problem that the city addresses. We do not ask whether the regulator subjectively believed or was motivated by other concerns, but whether an objective lawmaker could have so concluded, supported by an actual basis for the conclusion. Legitimate purpose may be shown by reasonable inferences from specific testimony of individuals, local studies, or the experiences of other cities.

*SDJ*, 837 F.2d at 1274 (internal citations omitted); *see also J & B*, 152 F.3d at 371 ("[T]he government must produce evidence that the challenged ordinance may advance its interest in combating adverse secondary effects attendant to nude dancing."). However, "[t]he First Amendment does not require a city, before enacting such an ordinance, to conduct new studies or produce evidence independent of that already generated by other cities, so long as whatever evidence the city relies upon is *reasonably believed to be relevant to the problem that the city addresses.*" *Renton*, 475 U.S. at 51–52, 106 S.Ct. at 931 (emphasis added); *Pap's A.M.*, 529 U.S. 277 at ——, 120 S.Ct. 1382, 1395, 146 L.Ed.2d 265. "A local government's interest in preserving the quality and character of neighborhoods and urban centers can ... support restrictions on both public nudity and adult entertainment." *Renton*, 475 U.S. at 51–52, 106 S.Ct. at 931. "In setting forth this interest, a local government may place great weight upon the experiences of, and studies conducted by, other local governments, as well as opinions of courts from other jurisdictions." *Renton*, 475 U.S. at 51–52, 106 S.Ct. at 931; *Pap's A.M.*, 529 U.S. 277, ——, 120 S.Ct. 1382, 1395, 146 L.Ed.2d 265. "[The] appropriate focus is not an empirical inquiry into the actual intent of the enacting legislature, but rather the existence or not of a current governmental interest in the service of which the challenged application of the statute may be constitutional." *Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 582, 111 S.Ct. 2456, 2469, 115 L.Ed.2d 504 (1991) (Souter, J., concurring); *see also J & B*, 152 F.3d at 371–72; *Pap's A.M.*, 529 U.S. 277 at —— – ——, 120 S.Ct. 1382, 1404–05, 146 L.Ed.2d 265 (Souter, J., concurring). While the evidence produced by the government must demonstrate "a link between the regulation and the asserted governmental interest[ ] under a reasonable belief standard," *id.* (citing *Renton*, 475 U.S. at 51–52, 106 S.Ct. at 931 (internal quotation marks omitted); *see also SDJ. v. City of Houston*, 837 F.2d at 1274), "legislation seeking to combat the secondary effects of adult entertainment *need not await localized proof of those effects.*" *Barnes*, 501 U.S. at 582, 111 S.Ct. at 2469 (Souter, J., concurring) (emphasis added). Finally, an ordinance is narrowly tailored if it effectively promotes the government's interest, but narrow tailoring is less important when the potential for overbreadth burdens sexually oriented expression, which is subject to less than full First Amendment protection. *SDJ*, 837 F.2d at 1276.

*Id.* at —— – ——, 120 S.Ct. at 1405–07 (emphasis in the original).

Thus, if the regulation is content based, this Court will apply strict scrutiny, and if the regulation is content-neutral, this Court will apply the *O'Brien* test enunciated in *Renton*.

## II. *PLAINTIFFS CLAIMS*

Plaintiffs advanced fourteen claims in

their First Amended Complaint.[9] However, they abandoned claims 9, 13, and 14 in their post-trial briefs.

## A. The Location Restrictions

Plaintiffs first argue that the location restrictions in Sections IX(e)(4)(a) and (e)(4)(b) of Wichita County, Texas Order 99–12–570 ("the Order") regulating sexually oriented businesses are unconstitutional under the First and Fourteenth Amendments because they are arbitrary and content based. Babe's is currently in violation of these restrictions because it is 610 and 635 feet from the two houses owned by Carter, as well as 1490 feet from a third house. The location restrictions requires it to be located at least 1500 feet from these houses.[10]

### 1. Content Based Analysis

■ As the Plaintiffs assert, "[a] regulation is 'content-based' if it is intended to suppress unpopular speech on the basis of the ideas or views expressed." (*See* Plaintiff's Brief After Trial at 24 (citing *Turner Broadcasting System, Inc. v. FCC*, 512 U.S. 622, 643, 114 S.Ct. 2445, 129 L.Ed.2d 497 (1994)("*Turner I* ")).) However, this Court, in applying precedent, finds that the stated reason for the regulation was unrelated to suppression of free expression, but was aimed at the secondary effects of sexually oriented businesses. *See Erie*, 529 U.S. at 277, —— – ——, 120 S.Ct. at 1391–1395, 1402; *Renton*, 475 U.S. at 47–49, 106 S.Ct. 925; *J & B*, 152 F.3d at 376. A regulation is content neutral "if it can be 'justified without reference to the content of the regulated speech.' " *J & B*, 152 F.3d at 376 (citation omitted). Here, the regulation can be justified based upon the County's assertion of secondary effects.

The fact that statements were made by individuals at the Commissioner's Court hearings, which strongly hint towards the

County's desire to suppress expression protected under the Constitution, does not transform the regulation into a content based regulation under current law. *See Renton*, 475 U.S. at 47–48, 106 S.Ct. 925. " 'What motivates one legislator to make a speech about a statute is not necessarily what motivates scores of others to enact it, and the stakes are sufficiently high for us to eschew guesswork.' " *Id.* (citation omitted). The regulations will be analyzed under *O'Brien*.

### 2. *O'Brien* Test

■ Applying *O'Brien*, the location restrictions in Sections IX(e)(4)(a) and (e)(4)(b) of the Order regulating sexually oriented businesses must fail because the County has no evidence of secondary effects that could possibly be "reasonably believed to be relevant to the problem that the city addresses." *Renton*, 475 U.S. at 51–52, 106 S.Ct. 925. *See also Erie*, 529 U.S. at —— – ——, 120 S. Ct. at 1402–6 (Souter, J., concurring). Although the County relies upon many studies of secondary effects of other cities, none of the studies have any relevance to the problem faced by Wichita County in the instant case.

It seems absurd to believe that a study of secondary effects created in New York City or Houston would be of any relevance to a hypothetical town of three people (Mrs. Carter, her son and their nearest neighbor). Nor is the relevance any stronger when the hypothetical town is replaced with the unincorporated areas of Wichita County. The area around Babe's is rural, containing pastures and fields with few residential dwellings. There are no schools, daycare centers, churches, or playgrounds in the area. The owner of the two closest homes to Babe's is not opposed to its operation, while the third home is just ten feet inside of the location restriction requirement. Additionally, the evi-

---

9. Filed June 27, 2000.

10. The County has waived the 1500 foot location restriction until November 1, 2002.

dence did not establish that there were any decreased property values in the area due to the operation of Babe's. Indeed, *this is actually the type of location that many cities would seek to relocate their sexually oriented businesses in an effort to regulate secondary effects.* Wichita County must do more than compile a list of studies from other locations having unrelated problems. It must reasonably seek to comprehend how that information is relevant to the problem that is presented to it. *See Renton*, 475 U.S. at 51–2, 106 S.Ct. 925. This it has not done. Accordingly, the location requirements cannot satisfy the *O'Brien* test and are unconstitutional.

## B. Six Foot Buffer Zone and Eighteen Inch Elevation Rules

Next, Plaintiffs argue that Section XXIV(a)(13) of the Order, requiring a six foot buffer zone between the entertainer and the patron and requiring the entertainer to perform only on a platform eighteen inches high, is unconstitutional. They do not dispute that these requirements are time, place, and manner restrictions, subject to the *O'Brien* test.[11] In fact, Plaintiffs stipulate that Wichita County satisfies the first two prongs of the test.[12] By stipulating the second requirement, Plaintiffs waive the requirement that the County provide evidence to support the interest that they advance.[13] *See generally J & B,*

11. As the courts continue to assert that the tests for intermediate scrutiny are interchangeable, *see Barnes*, 501 U.S. at 566, 111 S.Ct. 2456; *Clark*, 468 U.S. at 298, 104 S.Ct. 3065; *Lady J. Lingerie*, 176 F.3d at 1364, this Court applies the traditional *O'Brien* test at this point because both parties argue from this premise.

12. Namely that (1) the restrictions are within the County's constitutional power to adopt; and (2) they further the important or substantial government interest (Plaintiffs argue both test in the alternative) in preventing sexual contact and public lewdness.

13. However, there was ample evidence to support the stated interest of deterrence of sexual contact and illegal touching.

152 F.3d at 371–75. Therefore, the analysis for both the six foot buffer and eighteen inch elevation rule will focus on the last two prongs of the *O'Brien* test. *See O'Brien*, 391 U.S. at 376–77, 88 S.Ct. 1673.

### 1. Relatedness to Suppression of Free Expression

Plaintiffs contend that the interest advanced by the County is related to the suppression of free expression in violation of *O'Brien*'s third prong. *See O'Brien*, 391 U.S. at 376–77, 88 S.Ct. 1673. They argue that the enforcement of the six foot buffer zone would effectively eliminate a large number of tables within the club when table dances[14] are included. This result would effectively transform the business into a money losing venture that would have to close. The County counters that decrease profits are not a concern of the First Amendment. *See DLS, Inc. v. City of Chattanooga*, 107 F.3d 403, 413 (6th Cir.1997). However, this concept does not apply if—as in this case—"the ordinance were intended to destroy the market." *See id.* at 413. What the Court faces in this case is not decrease in the profitability of the club, but rather its elimination.[15] This Court finds that the purpose of the six foot rule, under these facts—and in the minds of many of the policymakers—was to run the Plaintiffs out of business.[16]

14. Table dances are dances that are performed for an extra fee by one or more of the entertainers for one or more patrons at their tables instead of on stage. There is a large amount of revenue generated for the clubs and entertainers from this type of performance.

15. It is unlikely that Babe's is a philanthropical organization willing to donate money for the sustainment of this form of expression.

16. The transcripts of the Minutes of Wichita County Commissioners Court provides ample evidence for this conclusion. (*See* Defendant's Trial Brief Exhibit B Corrected.)

However, "if [the regulation] can be 'justified without reference to the content of the regulated speech,'" the regulation satisfies the third *O'Brien* prong. *J & B*, 152 F.3d at 376. Based on this test, the County's interest of deterring sexual contact and illegal touching is a valid reason that justifies a regulation unrelated to the suppression of expression. *See Hang On, Inc., v. City of Arlington*, 65 F.3d 1248, 1254 (5th Cir.1995). In contrast, the County's interest in lessening the possibility of drug transactions between performers and patrons does not justify the regulation.[17] The Court finds absolutely no evidence to support a correlation between the drug trade and the six foot buffer requirement.[18] Instead, the evidence supports the finding that this interest is a pretext for the suppression of expression. Yet, the regulation satisfies *O'Brien*'s third prong based on the interest of deterring sexual contact and illegal touching. *See O'Brien*, 391 U.S. at 376–77, 88 S.Ct. 1673. Plaintiffs economic arguments remain to be considered under the fourth *O'Brien* prong.

## 2. No Greater Than is Essential to the Furtherance of the Advanced Interest

### a. Six Foot Buffer Zone

■ The regulation must still fall or be amended if it is greater than is required to further the interest of deterring sexual contact and touching. *See O'Brien*, 391 U.S. at 376–77, 88 S.Ct. 1673. Plaintiffs' economic argument is relevant to this issue. What distinguishes this case from the other cases on this issue is the fact that this Court finds that the six foot requirement would close down Babe's, not just decrease profits.[19] The diagram of Babe's floor layout presented by the Plaintiffs was more persuasive than the one provided by the architect hired by the County. In this Court's view, the County's architect witness did not take into account the actual operation of the club; specifically, his diagram did not incorporate how table dances are performed or their frequency.

A "reasonable opportunity to operate" has to have some basis in economic reality. Surely, the Constitution does not label regulations that require a one million dollar outlay to operate a nude dancing club—and reduce all profits to the negative range—a "reasonable opportunity to operate." This is not to say that profits are cognizable under the First Amendment, but that when the government advances an important and substantial interest, the Courts must do more than accept any regulation that satisfies the stated interest just because the popular majority disagrees with the message.[20] When constitutional rights are involved, the Court must insure that the regulation is narrow enough to achieve the government's interest without trampling too greatly on the constitutional right. *See Schad v. Borough of Mount Ephraim*, 452 U.S. 61, 69–70, 101 S.Ct. 2176, 68 L.Ed.2d 671 (1981). In the present case, the regulation must go

---

**17.** This interests is not even substantial or important under *O'Brien*'s second prong, as the record is void of any evidence of a link between the regulation and this stated interest.

**18.** This interest would have more relevance to bars, night clubs, and the prison (or half-way house), where the parties are clothed, than to nude dancing where at least one member of the hypothetical transaction is not clothed. The conversations of the Commissioners Court lend further evidence that this interest was added in an extra attempt to close the establishment.

**19.** The fact that the building could go through major renovations in an attempt to comply with the six foot rule does not change this Court's conclusion that such a result would effectively close the club. When the amount of remodeling are building requires costs that reach such a high point that it is not economically feasible to accomplish them, the free expression is still suppressed.

**20.** This Court intimates no opinion, positive or negative, about the message and/or expression in the instant case. It is irrelevant to this analysis.

only so far as is required to achieve the stated interest of deterring sexual contact and touching. Once this interest is satisfied, the regulation must not continue in an effort to decrease profits and increase expenses to the point that the establishment must close and silence the protected message and/or expression.

The evidence does suggest that another purpose for the six foot rule was to decrease sexual contact between the dancers and the patrons. The cases cited by the County suggest that the rules involved in those cases arose from concern about the police force's ability to see the violations of the no-touch rule. If this is the purpose of the instant regulation, it can be satisfied by a three foot buffer zone. Plaintiffs asserted that the normal man's reach is less than three feet. As the testimony proved, no buffer rule can stop a person that wants to touch someone. This is likely the reason why other police forces have argued that the buffer zone is useful in their enforcement of the no-touch policies rather than eliminating all touching. A three foot buffer zone would allow the Sheriff's Department to easily and effectively enforce the no-touch rule without trampling on the protected message and/or expression of the dancers. *See generally N.W. Enterprises, Inc. v. City of Houston,* 27 F.Supp.2d 754, 853–856 (S.D.Tex.1998).

### b. Eighteen Inch Elevation Rule

■■■ This regulation cannot survive *O'Brien*'s fourth prong. *See O'Brien,* 391 U.S. at 376–77, 88 S.Ct. 1673. There is little or no evidence as to the reason for this rule anywhere in the record. The interest of deterring sexual contact and touching has already been satisfied with the three foot buffer zone. Accordingly, this requirement is arbitrary and does not serve the interest of the County in light of the three foot buffer zone. Therefore, the eighteen inch elevation rule, under the facts of this case, is unconstitutional.

### 3. Vagueness

■■■ Finally, the term "Partially nude" makes the regulation void for vagueness. *See Papachristou v. City of Jacksonville,* 405 U.S. 156, 162, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972). However, the County can remedy this simply by defining the phrase, "Partially nude" as it has already done with "Nudity or State of Nudity" and "Semi-nude."

### C. The Demarcation Rule

■■■ Next, Plaintiffs argue that the demarcation rules in Section XXIV(a)(14) are unconstitutional.[21] In rebuttal, the County refers the Court to its argument concerning the six foot buffer zone and eighteen inch elevation requirements.

### 1. Vagueness

For the same reason the phrase "Partially nude" was found vague above, the use of this phrase without a definition makes this section unconstitutional. The Plaintiffs must be aware of what their criminal liabilities are. *See Papachristou,* 405 U.S. at 162, 92 S.Ct. 839. In contrast, contrary to the Plaintiffs' interpretation, this Court does not believe that the section is vague in establishing whether it applies to stage or table dancing. It applies to both by the language of the Order.

### 2. *O'Brien* Test

The demarcation section is also unconstitutional because the County has failed to carry its burden under *O'Brien. See O'Brien,* 391 U.S. at 376–77, 88 S.Ct. 1673. Under the second prong, the County has failed to come forward with any evidence of secondary effects that this rule is intended to ameliorate. Assuming that this Court accepts the interest used by the

---

**21.** The demarcation regulation requires some physical marking or barrier to mark the three-foot buffer zone.

County in justifying the six foot buffer zone, the section still fails under the fourth prong because the County has not shown why this regulation is needed—in addition to the three-foot buffer zone—to protect the interest of deterring sexual contact and touching. Thus, this Court finds the demarcation rule is not narrow enough to survive *O'Brien* when a three-foot buffer zone is already in place. If the demarcation rule is needed for some additional reason, the County has failed to carry its burden under intermediate scrutiny.[22] *See J & B*, 152 F.3d at 370.

### D. Alcoholic Beverages

Article XXIV(a)(16) of the Order is void and unenforceable as applied to Babe's, a BYOB, because it is inconsistent with and preempted by the Texas Alcoholic Beverage Code and the regulations of the Texas Alcoholic Beverage Commission. Wichita County conceded this point at trial and in its subsequent trial brief.

### E. Disclosure Requirements

■■■■■ Next, Plaintiffs argue that Section X(a)(3) of the Order, requiring an applicant for an employment identification badge to disclose his or her current address is unconstitutional because (1) it is a prior restraint on expressive conduct entitled to protection under the First Amendment, (2) it is not narrowly tailored to further a substantial government interest, and (3) it is an unreasonable and unnecessary invasion of the right to privacy protected by the First and Fourteen Amendments.

There is no doubt that the County has a substantial government interest in monitoring persons with histories of regulatory violations or sexual misconduct who manage or work in adult businesses. *See TK's Video, Inc. v. Denton County*, 24 F.3d 705, 710 (5th Cir.1994). Nor is there any argument that the County has the constitutional police power to pass this regulation. Thus, Plaintiffs argue that the regulation is not narrowly tailored to further a substantial government interest. With respect to the disclosure of the applicant's current home address and phone information, this Court agrees.

Although the Fifth Circuit has upheld "only the required disclosure of an applicant's 'age and certain prior regulatory infractions [related to sexually oriented businesses] and sexual offenses,'" *N.W. Enterprises*, 27 F.Supp.2d at 841 (quoting *TK's Video*, 24 F.3d at 710), the *N.W. Enterprises* Court found that the requirement of the applicant's current address was overbroad because it was more than was needed "to facilitate identification of individuals who commit crimes at sexually oriented businesses" and went beyond the information previously approved by the Fifth Circuit, *id.* at 840. That court held that the plaintiffs' concerns for their safety were well founded and supported by the evidence. *See id.* This Court now does the same and holds that the requirement to list applicants' current address and phone information on the application is unconstitutional because the information is not narrowly tailored to advance the County's interest.[23] Indeed, at trial, the County's attorney agreed that the information was improper and should not be disclosed.

### F. Identification Badge Exemptions

■■■■■ Next, Plaintiffs argue that the licensing requirements of Section X of the Order, requiring employee identification badges before dancers are hired or can perform—and also requiring the badges for temporary, casual, or professional dancers—is not narrowly tailored to fur-

---

**22.** As the demarcation section has already been found unconstitutional under these facts, the Court declines to rule on Plaintiffs remaining arguments in opposition to the demarcation rule.

**23.** As this section of the Order has been found unconstitutional under *O'Brien*, with respect to the current home address and phone information, this Court declines to issue an opinion as to the remaining Plaintiffs' arguments.

ther a substantial governmental interest without unduly burdening expressive conduct entitled to protection under the First Amendment, and are an unconstitutional prior restraint on free expression. Fifth Circuit law easily disposes of this claim. *See TK's Video* 24 F.3d at 708; *N.W. Enterprises, Inc.*, 27 F.Supp.2d at 844–846, 848. In *TK's Video*, the Fifth Circuit found a licensing process that took sixty days before issuance of a license to be constitutional.[24] *See TK's Video*, 24 F.3d at 708. Likewise, the *N.W. Enterprises* Court held that a ten day licensing period was constitutional. *See N.W. Enterprises, Inc.*, 27 F.Supp.2d at 844–846. In the case at bar, Wichita County grants a temporary badge on the same day that the applicants apply. *A fortiori*, Wichita County's one day wait period does not run afoul of the Constitution.[25]

However, Plaintiffs argue the regulation is unconstitutional, as applied, because the Sheriff's Department does not accept applications on the weekends. This argument fails for three reasons. First, even if the weekend closure effectively makes the wait time for some individuals three days, it is still less than the sixty or ten days that has been approved by courts in this circuit. *See TK's Video* 24 F.3d at 708; *N.W. Enterprises, Inc.*, 27 F.Supp.2d at 844–846. Second, any status quo argument does not apply to the dancers seeking licenses after the Order was passed.[26] *See TK's Video*, 24 F.3d at 708. Finally, Plaintiffs have failed to convince this Court that the complaints concerning the hours that the Sheriff's Department accepts ap-

plications rises to that of a constitutional violation. *See N.W. Enterprises*, 27 F.Supp.2d at 848. Thus, Section X of the Order is constitutional.[27]

## G. Criminal History

■■■■ Plaintiffs argue that the criminal history requirements of Section X(b) of the Order, authorizing the Sheriff to obtain a criminal history of all applicants for employee identification badges, is unconstitutional as applied because the Sheriff requires applicants to sign a blanket release to obtain a complete criminal history not limited to the disqualifying crimes enumerated in Section X(B)(1) from DPS. They allege the practice is not narrowly tailored, invades the privacy of the applicant, and there is no written policy nor security measures taken by the Sheriff to ensure the confidentiality of such records after they are obtained. However, the County introduced evidence at trial that proved that DPS only provided a complete criminal history report. Thus, the regulation is narrowly tailored. Additionally, the security and confidentiality of criminal records are controlled by other laws. No Plaintiff has shown standing to challenge the confidentiality procedures of the Sheriff's Department, *see N.W. Enterprises*, 27 F.Supp.2d at 847 n. 196, or shown that a criminal background check is related a deprivation of their First Amendment rights, *see id.* at 847. Therefore, this Court finds no constitutional violation on this claim.

## H. Records and Reports

Plaintiffs argue that the records and reports requirements of Sections XVI(a)

---

**24.** There is no distinction based upon the fact that TK's Video was a business as opposed to an individual. *See N.W. Enterprises*, 27 F.Supp.2d at 844 n. 191.

**25.** However, any future adjustment of this time period would be reviewed closely in order to ascertain the motive of such an adjustment, in light of the current provisions of the Order.

**26.** There is no evidence that the license requirement prevented dancers who were per-

forming before the Order from performing while they waited for a license.

**27.** This Court cannot become a mini-legislative body. The inquiry of this Court is limited to whether the Order is legal, not if it is reasonable or the best alternative. Although the parties are free to work out a fax type application alternative—particularly with regards to "headline dancers" that are booked by agents in advance for special engagements—the issue is not reviewable by this Court.

and (b) of the Order are unconstitutionally overbroad, are not narrowly tailored to further a legitimate governmental interest, have an impermissible chilling effect upon free expression, and have been declared unconstitutional by prior court decisions. Specifically, they argue that the information required in the records is redundant, as it is already contained on the employee badges, and that time records for two years are unnecessary. This Court finds that Sections XVI(a) and (b) satisfy *O'Brien* and are thus constitutional, except to the extent they include current phone and address information found unconstitutional under these facts above. *See O'Brien*, 391 U.S. at 376–77, 88 S.Ct. 1673. There is, perhaps unfortunately, no constitutional guarantee that the government will be efficient and not redundant.

## I. Enjoining Free Speech

■ Next, Plaintiffs argue that Section VIII, authorizing suit to enjoin the operation of an enterprise for violation of the Order, and authorizing the criminal district attorney to file such a suit, is overbroad to the extent it authorizes a suit to enjoin free speech. They assert that such an injunction, even in the face of imminent and irreparable harm, is an unconstitutional prior restraint of free expression entitled to protection under the First Amendment. They are correct. *See Universal Amusement Co., Inc., v. Vance*, 587 F.2d 159, 168–73 (5th Cir.1978). The County agrees, but attempts to distinguish this case by arguing that any injunction issued under Section VIII would not enjoin nude dancing. This argument is without merit. It would make little sense to enjoin someone from violating the Order. The Order already prohibits the acts. Thus, it seems more likely that the injunction would seek to enjoin the protected activity. This it cannot do. *See id.* Thus, Section VIII, authorizing suit to enjoin the operation of an enterprise for violation of the Order, and authorizing the criminal district attorney to file such a suit, is overbroad and unconstitutional. *See id.*

## J. Unobstructed View

■ Plaintiffs argue that the unobstructed view provisions of Section XXIV(c)—requiring that inspecting law enforcement personnel have an unobstructed view of every area of the premises from any other area of the premises—is not narrowly tailored, and unconstitutional under the fourth prong of the *O'Brien* test. Indeed, they are correct to focus their attention on the narrowness requirement of *O'Brien*'s fourth prong.

Evidence was provided to show that the entire interior of Babe's can be seen from the managers station except for the full interiors of semi-private rooms, where table dances can also occur.[28] To accommodate this requirement would require Babe's to dismantle two semi-private rooms and move them to where the men's restroom is currently located. An addition would have to be added to the building to replace the men's restroom. The new construction would require additional plumbing and adjustments to the pitch of the roof. Plaintiffs estimate this construction would cost approximately $15,000 to $23,000. However, technically, this would not fully comply with the regulation. Plaintiffs argue that, to fully satisfy the Order, the semi-private rooms would have to be eliminated completely.

To comply with the requirement allowing for an unobstructed view of every area of the premises from any other area of the premises, the owners installed surveillance cameras with a monitor at the manager's station. The monitor can be manipulated to view four cameras at once. Each of the semi-private rooms has a camera located on the wall over the customer's seat. These cameras provide a full view of the entertainer, but not the customer. The owner has offered to install an additional camera in each of the semi-private rooms

---

28. This does not include views of the dressing room or restrooms.

on the wall opposite the customer to give a full view of the customer. This addition would cost the club approximately $5,000.

The County argues that cameras can be manipulated and the images misleading. However, it fails to show the Court how a view from one side of a crowded room, "with the naked eye," can be any less misleading. They also argue that tapes can be altered.[29] Yet, the argument of which system is better is not within the purview of *O'Brien*'s fourth prong. The issue is whether the regulation is narrowly tailored to achieve the County's important or substantial interest. *See id.*

The County alludes to the fact that its interest is in law enforcement. Indeed, this is a substantial government interest. However, the Court is convinced that the County's interest can be served with two cameras in each of the semi-private rooms, along with additional monitors at the manager's station, without encroaching on the First Amendment. The Plaintiffs can work with the County to ensure that the law enforcement interest of the County is fully satisfied without eliminating the semi-private rooms. This is not direction, but rather proof that the regulation is not narrow enough to protect the interest of the County and the First Amendment rights of the Plaintiffs. If there is another County interest served by the unobstructed view regulation, the County has failed to advance it before this Court. Accordingly, Section XXIV(c), requiring that inspecting law enforcement personnel have an unobstructed view of every area of the premises from any other area of the premises, fails to satisfy the fourth *O'Brien* prong and is unconstitutional.

### K. Tipping

▇▇▇ Finally, Plaintiffs argue that the provision of Section XXIV(a)(11) prohibiting the tipping of "partially nude" or "to-

tally nude" dancers except by tips dropped into a container by the customer. They also assert that it is not narrowly tailored and is unconstitutional under the fourth prong of *O'Brien*.

### 1. Vagueness

Section XXIV(a)(11) is not vague as to the issue of whether the Section applies to entertainers who are "partially nude" or "totally nude." As the Plaintiffs argue, "A provision need not be cast in terms that are mathematically precise; it need only give fair warning of the conduct proscribed, in light of common understanding and practices." (Plaintiffs' Brief After Trial at 80–81 (citations omitted).) The common understanding is that it applies to entertainers who are "partially nude" or "totally nude"—that is entertainers who are at the time of tipping either "partially nude" or "totally nude."

However, Section XXIV(a)(11) is vague to the extent that "partially nude" is not defined. Thus, Section XXIV(a)(11) is unconstitutional based upon the omission of a definition for the phrase "partially nude." *See Papachristou,* 405 U.S. at 162, 92 S.Ct. 839.

### 2. *O'Brien*

The interests advanced by the County are not supported by any evidence of the secondary effects of prostitution and drug trafficking in relation to tipping by the hand-to-hand method. *See J & B Entertainment,* 152 F.3d at 371–5. Thus, prostitution and drug trafficking are not interest that can justify the tipping regulation.

The three-foot buffer zone, discussed above, does justify regulating the hand-to-hand tipping complained of in the present case. Hand to hand tipping would violate the three foot buffer zone already found to be constitutional. A patron entering the

---

29. This argument is in response to the Plaintiffs' assertion that the tapes can be used as evidence to help with criminal prosecution. The argument is irrelevant because, if the tapes are destroyed or altered, the law enforcement officials are back to the point they would have been in with just the "naked eye."

zone would hamper the law enforcement's ability to tell if sexual contact or touching were taking place. Thus, all four prongs of *O'Brien* are satisfied. Section XXIV(a)(11) of the Order, prohibiting tipping except in a container, would be constitutional if it did not contain the vague phrase "partially nude."

### CONCLUSION

Based upon the foregoing Finding of Facts and Conclusions of Law the location restrictions in Sections IX(e)(4)(a) and (e)(4)(b) ("**claim 1**") are **UNCONSTITUTIONAL**; the six foot buffer zone and eighteen inch elevation requirements in Section XXIV(a)(13) ("**claim 2**") are **UNCONSTITUTIONAL**, but a **three foot buffer zone** would be **constitutional**; the demarcation rule in Section XXIV(a)(14) ("**claim 3**") is **UNCONSTITUTIONAL**; the alcoholic beverage requirements of Article XXIV(a)(16) ("**claim 4**") are **UNENFORCEABLE** because they are preempted and inconsistent with state law; the disclosure requirements of Section X(a)(3) as it pertains to employees' current address and phone information ("**claim 5**") are **UNCONSTITUTIONAL**; the license requirements of Section X ("**claim 6**") are **CONSTITUTIONAL**; the criminal history requirements of Section X(b) ("**claim 7**") are **CONSTITUTIONAL**; the records and reports requirements of Sections XVI(a) and (b) ("**claim 8**") are **CONSTITUTIONAL**, except to the extent that they require current phone and address information; Section VIII, authorizing suits to enjoin, ("**claim 10**") is **UNCONSTITUTIONAL**; the unobstructed view provisions of Section XXIV(c) ("**claim 11**") are **UNCONSTITUTIONAL**; and the tipping provisions of Section XXIV(a)(11) ("**claim 12**") will be constitutional when the vague phrase "partially nude" is defined. Not withstanding the above, Section XXIV(a)(13) ("**claim 2**"), Section XXIV(a)(14) ("**claim 3**"), and Section XXIV(a)(11) ("**claim 12**") are **UNCONSTITUTIONALLY VAGUE** because the phrase "partially nude" is not defined.

Further, Plaintiffs' claim 9, relating to underage dancers, **claim 13**, relating to an unconstitutionally retroactive effect, and **claim 14**, relating to political oppression, are **DISMISSED WITH PREJUDICE** for lack of prosecution.

It is so **ORDERED**.

### FINAL JUDGMENT

Pursuant to Rule 58 of the Federal Rules of Civil Procedure and the Court's Findings of Fact and Conclusions of Law, entered on September 19, 2000, it is hereby

**ORDERED** that final judgment is entered for the Plaintiffs on the following claims: the location restrictions in Sections IX(e)(4)(a) and (e)(4)(b) ("claim 1"); the six foot buffer zone and eighteen inch elevation requirements in Section XXIV(a)(13) ("claim 2"); the demarcation rule in Section XXIV(a)(14) ("claim 3"); the alcoholic beverage requirements of Article XXIV(a)(16) ("claim 4"); the disclosure requirements of Section X(a)(3) as it pertains to employees' current address and phone information ("claim 5"); Section VIII, authorizing suit, ("claim 10"); the unobstructed view provisions of Section XXIV(c) ("claim 11"); and the tipping provisions of Section XXIV(a)(11) ("claim 12"). It is further

**ORDERED** that final judgment is entered for the Defendant on the following claims: the license requirements of Section X ("claim 6"); the criminal history requirements of Section X(b) ("claim 7"); and the records and reports requirements of Sections XVI(a) and (b) ("claim 8"), except to the extent that they require current phone and address information. It is further

**ORDERED** that Plaintiffs' claim 9, relating to underage dancers, claim 13, relating to an unconstitutionally retroactive effect, and claim 14, relating to political oppression, are **DISMISSED WITH**

PREJUDICE for lack of prosecution. It is further

ORDERED that Defendant's six foot buffer requirement is reduced to a three foot buffer zone. It is further

ORDERED that the tipping provisions of Section XXIV(a)(11) ("claim 12") will be constitutional when the vague phrase "partially nude" is defined. It is further

ORDERED that the preliminary injunction entered by the Court on April 25, 2000, enjoining Defendant from enforcing the six foot buffer zone or eighteen inch elevation requirement, is hereby **DISSOLVED**. It is further

ORDERED that the Defendant is hereby **ENJOINED** from enforcing any portion of the Order found to be unconstitutional in the Findings of Fact and Conclusions of Law in this case. It is further

ORDERED that costs are taxed against the Defendant.

It is **SO ORDERED.**