**UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

_____

**No. 00-11220**
_____

**LLEH, INC., Etc.; ET AL.,**

**Plaintiffs,**

**LLEH, INC., doing business as Babe's; APRIL COOPER; ANITA
JACKSON; SARAH BLACKSTOCK,**

**Plaintiffs-Appellees,**

**versus**

**WICHITA COUNTY, TEXAS,**

**Defendant-Appellant.**

**Appeal from the United States District Court
for the Northern District of Texas**

April 22, 2002

Before DAVIS, WIENER, and BARKSDALE, Circuit Judges.

RHESA HAWKINS BARKSDALE, Circuit Judge:

Regarding the regulations by Wichita County, Texas, for sexually oriented businesses (SOBs), primarily at issue is whether, for the regulations' location restriction, studies of secondary effects for cities are relevant to such non-urban areas. Among other things, the regulations govern location, stage height, and layout, as well as mandate information disclosure and dancer-to-patron distance. Claiming the regulations pass First Amendment muster, the County appeals a bench trial judgment in favor of LLEH,

Inc., and its employees.  **JUDGMENT ON THE MERITS AFFIRMED in PART and REVERSED in PART; JUDGMENT AWARDING ATTORNEY'S FEES and EXPENSES VACATED; REMANDED.**

I.

In June 1999, William Essary, LLEH's sole owner, purchased from Pearl Carter property outside the city limits of Wichita Falls, in an unincorporated area of Wichita County, Texas.  LLEH planned to open Babe's BYOB, a SOB, on the property.  Learning of LLEH's plans after it had purchased the property and begun construction, the County decided to enact regulations governing the operation and location of SOBs in the County's unincorporated area.  (The County attributes its late discovery to LLEH's failure to comply with Texas law, effective 1 September 1999, requiring certain intending SOB operators to post public notice of such intent.)

The County requested the District Attorney to investigate the requirements to formulate regulations.  The District Attorney obtained, and considered, studies compiled by other jurisdictions detailing their reasons for, and experiences in, implementing SOB regulations.  Those jurisdictions included:  Cleburne and Houston, Texas; Garden Grove, California; Oklahoma City, Oklahoma; Newport News, Virginia; Bellevue, Washington; St. Croix County, Wisconsin; and Minnesota.  (The County also considered a report prepared for the American Center for Law and Justice.)

Between October and December 1999, the County held public hearings on its intent to adopt the regulations. Among those participating were law enforcement officers, County citizens, a real estate appraiser, and LLEH (with counsel).

Babe's began doing business in early October 1999. On 6 December, the County enacted Order No. 99-12-579, entitled "The Regulations for Sexually Oriented Businesses in the Unincorporated Areas of Wichita County, Texas" (the Order), with a 10 December effective date. The Order requires a SOB to obtain a permit (SOBP) in order to conduct business in that part of the County covered by the Order. Additionally, in pertinent part, the Order provides:

> SECTION IX — SOBP APPLICATION [*location provision*]
>
> ....
>
> (e) Applicants for a SOBP shall ... provide:
>
> ....
>
>   (4) A certification that the proposed enterprise will be located:
>
>     (a) *a minimum of one thousand five hundred (1,500) feet* from any child care facility, school, *dwelling*, hospital, public building, public park, or church or place of religious worship[;]
>
>     (b) a minimum of one (1) mile from a penal institution[.]
>
>   ....

3

SECTION X — EMPLOYEE IDENTIFICATION BADGE APPLICATION [*disclosure provision*]

(a)   Any person who is employed in any capacity at an enterprise ... is required to make application with and obtain from the County Sheriff an employee identification badge.... The individual applicant shall ... *provide the following information to the County Sheriff*:

....

(3)   the city, county, and state of each of the applicant's residences for the three (3) years immediately preceding the date of the application, indicating the dates of each residence and *including the present mailing address of the applicant.*

....

SECTION XXIV — OPERATING REQUIREMENTS FOR ENTERPRISES [*buffer, stage-height, demarcation, and unobstructed-view provisions*]

(a)   The following shall be violations of these regulations....

....

(13)   for any person performing partially nude or totally nude at an enterprise to do so *less than six (6) feet from the nearest patron and on a stage less than eighteen (18) inches above floor level;*

(14)   for the owner or operator of an enterprise to allow any location within the enterprise to be used for the purpose of partially nude or totally nude live exhibitions *unless it is marked with clear indications of the six (6) foot zone. The absence of this demarcation will create a presumption that there have*

4

been violations of these regulations during performances in unmarked areas[.]

....

(c) Except as otherwise provided herein[,] the interior of an enterprise shall be configured in such a manner that *inspecting law enforcement personnel have an unobstructed view* of every area of the premises from any other area of the premises, excluding restrooms, to which any patron is allowed access for any purpose.

(Emphasis added.)

The Order also confers authority upon the District Attorney to seek to have enjoined violations of the Order.

SECTION VIII — INJUNCTION [injunction provision]

(a) *A person who violates these regulations* is subject to a suit to enjoin operation of the enterprise pursuant to Section 243.010 of the Texas Local Government Code and is also subject to prosecution for criminal violations.

(b) The Criminal District Attorney is hereby authorized to file suit *to enjoin violation of these regulations*. A suit may be initiated upon information received from private citizens or any law enforcement agency.

(Emphasis added.)

Babe's was in violation of the 1500 feet minimum distance from a dwelling (three houses). (Two of those houses are owned by Pearl Carter, who had sold the property to Essary.) Shortly after the Order's enactment, and because Babe's was already in operation, the

Sheriff notified LLEH it would be given a 60-day grace period before the Order was enforced against it.

In February 2000, and apparently still within the grace period, LLEH filed an application under the Order's *contingent* SOBP provisions, designed to permit *existing* SOBs not in conformity with the Order's location provision to continue operating during an amortization period in order to recoup their investments. LLEH sought a contingent SOBP for an approximate eight-year period.

A series of checks by law enforcement officials during March and April 2000 revealed, however, that Babe's dancers were not complying with a number of the Order's provisions. The Sheriff obtained warrants for the arrest of dancers for, and management for allowing, violation of the buffer provision. On 30 March, the Sheriff's Office notified LLEH its SOBP application had been denied, citing numerous violations of the Order.

Earlier that March, LLEH filed this action, requesting injunctive and declaratory relief with respect to a number of the Order's provisions. During a 10 April conference with the district court, the County agreed not to enforce the Order until a 25 April hearing on LLEH's preliminary injunction request. At that hearing, enforcement of the buffer provision was preliminarily enjoined.

That May, the County heard the appeal of LLEH's SOBP denial. Later that month, the County agreed to both waive the location provision and reduce the buffer provision from six to three feet

6

until November 2002 — the point, according to the County, by which LLEH could recoup its initial investment. (As noted, LLEH maintained it needed a much longer period in which to do so.)

A bench trial was held in July, with judgment entered that September (2000). Relevant to this appeal, the district court: (1) held that the location, buffer, stage-height, demarcation, unobstructed-view, and disclosure provisions violated the First Amendment, failing the tests established in *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41 (1986), and/or *United States v. O'Brien*, 391 U.S. 367 (1968); (2) amended the buffer provision from six to three feet; and (3) held the injunction provision unconstitutionally overbroad. *LLEH, Inc. v. Wichita County, Texas*, 121 F. Supp. 2d 513 (N.D. Tex. 2000) (*LLEH*).

Post-judgment, LLEH sought attorney's fees and expenses (fees). Approximately $43,000 was awarded.

## II.

The County challenges most of the rulings against the Order, as well as the fees award.

## A.

Following a bench trial, findings of fact are reviewed for clear error; legal issues, *de novo*. *E.g., Joslyn Mfg. Co. v. Koppers Co., Inc.*, 40 F.3d 750, 753 (5th Cir. 1994). "[W]e may affirm for reasons other than those relied upon by the district

7

court". *Id.* (citing *Ballard v. United States*, 17 F.3d 116, 118 (5th Cir. 1994)).

"Whether ... free speech rights have been infringed is a mixed question of law and fact." *Int'l Soc'y for Krishna Consciousness of New Orleans, Inc. v. Baton Rouge*, 876 F.2d 494, 496 (5th Cir. 1989) (citing *Dunagin v. City of Oxford*, 718 F.2d 738, 748 n.8 (5th Cir. 1983), *cert. denied*, 467 U.S. 1259 (1984)). Accordingly, our "review is *de novo*". *Id.* (quoting *Dunagin*, 718 F.2d at 748 n.8).

"While it is now beyond question that nonobscene nude dancing is protected by the First Amendment, even if 'only marginally so,' it is also clear that the government can regulate such activity." *J&B Entm't, Inc. v. City of Jackson*, 152 F.3d 362, 369 (5th Cir. 1998) (quoting *Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 566 (1991); internal citations omitted). The test for reviewing such regulations, however, is not as clear: the test for time, place, or manner regulations, described in *Renton,* 475 U.S. at 47; or the four-part test for incidental limitations on First Amendment freedoms, established in *O'Brien*, 391 U.S. at 376-77.

Under *Renton*, "zoning ordinances designed to combat the undesirable *secondary effects* of [SOBs] are to be reviewed under the standards applicable to 'content-neutral' time, place, and manner regulations". 475 U.S. at 49 (emphasis added). "[Such] regulations are acceptable so long as they are designed to serve a substantial governmental interest and do not unreasonably limit alternative

8

avenues of communication". *Id.* at 47. Additionally, they must be narrowly tailored to achieve the government's interest. *See id.* at 52. "A content-neutral time, place, or manner restriction must (1) be justified without reference to the content of the regulated speech; (2) be narrowly tailored to serve a significant or substantial governmental interest; and (3) preserve ample alternative means of communication." *TK's Video, Inc. v. Denton County, Texas*, 24 F.3d 705, 707 (5th Cir. 1994). Along the same line, *O'Brien* provides:

> [A] government regulation [of expressive conduct] is sufficiently justified [1] if it is within the constitutional power of the Government; [2] if it furthers an important or substantial governmental interest; [3] if the governmental interest is unrelated to the suppression of free expression; and [4] if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest.

391 U.S. at 377.

Our court has reviewed SOB licensing and location provisions under the *Renton* test. *See, e.g.*, *Woodall v. City of El Paso*, 49 F.3d 1120, 1122-27 (5th Cir.) (1000-foot location provision), *cert. denied*, 516 U.S. 988 (1995); *Grand Brittain, Inc. v. City of Amarillo*, 27 F.3d 1068, 1069-70 (5th Cir. 1994) (per curiam) (1000-foot location provision); *TK's Video, Inc.*, 24 F.3d at 707-11 (licensing, information disclosure, and internal layout provisions); *Lakeland Lounge of Jackson, Inc. v. City of Jackson*, 973 F.2d 1255,

9

1257-60 (5th Cir. 1992) (250-foot/1000-foot location and light-industrial zoning provisions), *cert. denied*, 507 U.S. 1030 (1993).

We have subsequently reviewed a public nudity ordinance and "no touch" provision under the **O'Brien** test. *See* **J&B Entm't, Inc.**, 152 F.3d at 369-78; **Hang On, Inc. v. City of Arlington**, 65 F.3d 1248, 1253-55 (5th Cir. 1995).

**Clark v. Community for Creative Non-Violence**, 468 U.S. 288, 298 (1984), noted the tests' similarities: "[**O'Brien's**] four-factor standard ... for validating a regulation of expressive conduct ... is little, if any, different from the standard applied to time, place, or manner restrictions". In fact, in **Barnes v. Glen Theatre, Inc.**, 501 U.S. 560 (1991), concerning a challenge to a public indecency law brought by two nude dancing establishments, a plurality of the Court suggested the tests are interchangeable:

> The "time, place, or manner" test was developed for evaluating restrictions on expression taking place on public property which had been dedicated as a "public forum," although we have on at least one occasion applied it to conduct occurring on private property. *See* **Renton v. Playtime Theatres, Inc.**, 475 U.S. 41 [(1986)]. In **Clark** we observed that this test has been interpreted to embody much the same standards as those set forth in **United States v. O'Brien**, and we turn, therefore, to the rule enunciated in **O'Brien**.

*Id.* at 566 (plurality opinion; internal citations omitted).

The district court apparently applied **Renton** in reviewing the location provision; for the others, **O'Brien**. Because neither side

10

takes issue with the particular test applied to each of the respective provisions, we will proceed as did the district court. In any event, our holding for each provision is the same under either test.

1.

The district court held the location provision unconstitutional for want of relevant evidence of secondary effects: "Although the County relie[d] upon many studies of secondary effects of other *cities*, none of the studies [has] any relevance to the problem faced by Wichita County" in an unincorporated, rural area with few residential dwellings. **LLEH,** 121 F. Supp. 2d at 521 (emphasis added).

The County's interest, as identified in the Order's preambulary language, concerns combating SOBs' deleterious effects and protecting the health, safety, and welfare of SOB patrons and County citizens. "A local government's interest in preserving the quality and character of neighborhoods and urban centers can, if properly set forth, support restrictions on ... adult entertainment." **J&B Entm't, Inc.**, 152 F.3d at 371 (citing **Renton**, 475 U.S. at 50). "In setting forth this interest, a local government may place great weight upon the experiences of, and studies conducted by, other local governments, as well as opinions of courts from other jurisdictions." **Id.** (citing **Renton**, 475 U.S. at 51).

> The First Amendment does not require a city, before enacting such an ordinance, to conduct

11

new studies or produce evidence independent of that already generated by other cities, *so long as whatever evidence the city relies upon is reasonably believed to be relevant to the problem that the city addresses.*

**Renton**, 475 U.S. at 51-52 (emphasis added).

The district court held, and LLEH maintains, that the County's reliance on studies of secondary effects in urban areas is rendered irrelevant by the rural characteristics of the County's unincorporated areas, particularly the low population and dearth or absence of residences, schools, daycare centers, churches, and playgrounds in the area around Babe's.

To the extent the district court focused on the area in Babe's immediate vicinity, the court erred. "Regulations that burden speech incidentally or control the time, place, and manner of expression must be evaluated in terms of their *general* effect." **United States v. Albertini**, 472 U.S. 675, 688-89 (1985) (emphasis added). Moreover, "[t]he First Amendment does not bar application of a neutral regulation that incidentally burdens speech merely because a party contends that allowing an exception *in the particular case* will not threaten important government interests." **Id.** at 688 (emphasis added; citing **Clark v. Community for Creative Non-Violence**, 468 U.S. 288, 296-297 (1984)).

Even if the area immediately surrounding Babe's were the only area in question, the studies relied upon by the County were still relevant. The secondary effects that urban areas have experienced

12

(well documented in the relied-upon studies) are precisely what the County is attempting to *avoid*. This is evinced by the Order's preambulary language. For example, the County sought to "minimize and *control* ... adverse effects" and "*deter* the spread of *urban and rural* blight". (Emphasis added.)

Accordingly, it is logical that the County would: (1) review the experiences of urban areas, as discussed in the studies; (2) consider what measures those areas have employed to combat secondary effects; and (3) tailor those corrective measures to the County's needs. By so doing, the County may, *in its continued growth and development*, successfully sidestep many of the problems encountered by urban areas. In this respect, the relied-upon studies are "reasonably believed to be relevant" to the problems the County seeks to address. *See Renton*, 475 U.S. at 51.

2.

The district court held the six-foot buffer and 18-inch stage height provisions violated *O'Brien's* fourth prong: "incidental restriction on ... First Amendment freedoms [can be] no greater than is essential to the furtherance of that interest". *O'Brien*, 391 U.S. at 377.

LLEH stipulated that the Order satisfies the first and second *O'Brien* prongs; and, the district court held these two provisions satisfied the third. *See LLEH*, 121 F. Supp. 2d at 522-23. (The district court also held these provisions, along with the

13

demarcation provision discussed *infra*, void for vagueness because they apply to "partially nude" performances without defining that term.  The County does not contest this holding.  The district court suggested that "the County can remedy this simply by defining the phrase, 'Partially Nude' as it has already done with 'Nudity or State of Nudity' and 'Semi-nude[,]'", *id.* at 524; the County stated, at oral argument, that it intends to do so.)

a.

Concerning the buffer provision and **O'Brien's** fourth prong, the district court stated:  "[T]he regulation must go *only so far as is required* to achieve the stated interest of deterring sexual contact and touching".  *Id.* at 523-24 (emphasis added).  It determined:  the provision "would effectively close the club", *id.* at 523 n.19; and, accordingly, only a less restrictive, *three*-foot buffer would be constitutional, *id.* at 524.

The district court's analysis runs contrary to the principle that "an incidental burden on speech is no greater than is essential, and therefore is permissible under **O'Brien**, *so long as the neutral regulation promotes a substantial government interest that would be achieved less effectively absent the regulation*".  **Albertini**, 472 U.S. at 689 (emphasis added); *see also* **Ward v. Rock Against Racism**, 491 U.S. 781, 798-99 (1989).  "[S]uch regulations [are not] invalid simply because there is some imaginable alternative that might be less burdensome on speech".  **Albertini**,

14

472 U.S. at 689. Moreover, "[t]he validity of such regulations does not turn on a judge's agreement with the responsible decision maker concerning the most appropriate method for promoting significant government interests". *Id.* Nor does it turn on "the degree to which those interests should be promoted". *Ward*, 491 U.S. at 800.

In addition, the district court's finding that the six-foot buffer would effectively close Babe's is not controlling. "The [provision] does not ban all [partially or totally nude dancing], but instead focuses on the source of the evils the [County] seeks to eliminate ... and eliminates them without at the same time banning or significantly restricting a substantial quantity of speech that does not create the same evils." *Id.* at 800 n.7. The six-foot buffer may have a significant impact on Babe's; but, as noted *supra*, "[r]egulations that burden speech incidentally or control the time, place, and manner of expression must be evaluated in terms of their *general* effect". *Albertini,* 472 U.S. at 688-89 (emphasis added; internal citation omitted); *see also **DLS, Inc. v. City of Chattanooga***, 107 F.3d 403, 413 (6th Cir. 1997) (reviewing a similar six-foot buffer requirement and noting that, to the extent economic impact is considered in determining whether a regulation is sufficiently narrow, "we consider the economic effects of the ordinance in the aggregate, not at the individual level; if the ordinance were intended to destroy the market for adult cabarets, it might run afoul of the First Amendment, but not if it merely has

15

adverse effects on the individual theater"). In this light, the buffer provision satisfies *O'Brien's* narrow tailoring prong.

b.

The district court held the 18-inch stage-height provision did not satisfy *O'Brien's* fourth prong: "The interest of deterring sexual contact and touching has already been satisfied with the three foot buffer zone [substituted by the district court for the Order's six-foot zone]. Accordingly, this requirement is arbitrary and does not serve the interest of the County in light of the three foot buffer zone". *LLEH*, 121 F. Supp. 2d at 524.

Again, it is not within a court's province to base its ruling on its determination of "the most appropriate method for promoting [the] government interest[]". *Albertini*, 472 U.S. at 689. Because the County's interests would be achieved less effectively absent the stage-height provision, that provision satisfies *O'Brien's* fourth prong.

3.

The district court held the demarcation provision fails to satisfy two of the *O'Brien* prongs: the second, for want of "evidence of secondary effects that this rule is *intended* to ameliorate", *LLEH*, 121 F. Supp. 2d at 524 (emphasis added); and the fourth, because it is not "narrow enough ... when [the court-substituted] three-foot buffer zone is already in place", *id*. at 525.

16

"Our appropriate focus is not an empirical enquiry into the actual intent of the enacting legislature, but rather the existence or not of a current governmental interest in the service of which the challenged application of the statute may be constitutional." *Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 582 (1991) (Souter, J., concurring) (citing *McGowan v. Maryland*, 366 U.S. 420 (1961)). (As noted, LLEH stipulated that the Order *satisfies* the second prong.)

The demarcation provision is simply a manifestation of the buffer provision; it furthers the same substantial interests and merely gives definition to the buffer provision. Accordingly, it imposes no further restriction on speech. *O'Brien's* second and fourth prongs are satisfied.

4.

The district court held the unobstructed-view provision is not sufficiently narrow to satisfy *O'Brien's* fourth prong. Our court has upheld similar provisions. At issue in *TK's Video, Inc.*, 24 F.3d at 705, was, *inter alia*, a provision that provided:

> The interior of the premises shall be configured in such a manner that there is an unobstructed view from a manager's station of every area of the premises to which any patron is permitted access for any purpose excluding restrooms.... The view required in this subsection must be by direct line of sight from the manager's station.

*Id.* at 723. After explaining that the provision was relevant to an interest in protecting against "illegal and unsanitary sexual

17

activity", we held:  "The design and layout regulations narrowly respond to a substantial governmental interest".  *Id.* at 711*; see also FW/PBS, Inc. v. City of Dallas*, 837 F.2d 1298, 1304 (5th Cir. 1988) ("[I]n accordance with the prevailing view, ... the first amendment does not prohibit the City of Dallas from requiring that viewing booths in adult theatres be open".).

The district court focused on the particular hardships that might arise out of compliance with the unobstructed-view provision. After discussing how costly compliance would prove, the court noted LLEH had voluntarily installed surveillance cameras with a monitor at the Babe's manager's station.  The district court reasoned that, if LLEH installed two additional cameras, along with additional monitors at the manager's station, the County's interest in law enforcement could be served.  Consequently, it concluded, the provision was not sufficiently narrow to satisfy *O'Brien's* fourth prong.

Again, a regulation with incidental burdens on speech is not invalid "simply because there is some imaginable alternative that might be less burdensome on speech".  *Albertini*, 472 U.S. at 689. Such a regulation satisfies *O'Brien's* fourth prong "so long as the neutral regulation promotes a substantial government interest *that would be achieved less effectively absent the regulation*".  *Id.* at 689 (emphasis added).

18

At trial, the County asserted "that cameras can be manipulated and the[ir] images [can be] misleading". **LLEH**, 121 F. Supp. 2d at 528. The court dismissed this point because the County "fail[ed] to show the Court how a view from one side of a crowded room, 'with the naked eye,' can be any less misleading". **Id.** We conclude, however, that the County's interest would be achieved less effectively absent the unobstructed view provision.

Moreover, as noted, the "[r]egulations that burden speech incidentally or control the time, place, and manner of expression must be evaluated in terms of their *general* effect". **Albertini,** 472 U.S. at 688-89 (emphasis added; internal citation omitted). The district court erred to the extent it focused on the impact the unobstructed view provision had on Babe's alone.

5.

The disclosure provision held violatiave of **O'Brien's** fourth prong requires that, in order to obtain the necessary employee identification badge to work at a SOB, the applicant provide certain information to the Sheriff, including, *inter alia*, "the city, county, and state of each of the applicant's residences for the three (3) years immediately preceding the date of the application, indicating the dates of each residence *and including the present mailing address* of the applicant". (Emphasis added.) The application form used by the Sheriff to collect the information

19

employs that same language, then provides spaces to list the date and applicant's address.

At trial, a Sheriff's representative answered "yes" when asked if the application form requests "the current *residential* address of the applicant". Without explanation, the district court determined the disclosure provision and/or the application itself required the applicant to list not only the "current address *[but also] phone information*" and held that the requirement to list such information "is not narrowly tailored to advance the County's interest". **LLEH**, 121 F. Supp. 2d at 525 (emphasis added). (LLEH maintains the district court also held the provision unconstitutionally overbroad. The court ruled solely on the **O'Brien** narrowness prong. **Id.** at 525 n.23.)

Neither the provision nor the application form requests a telephone number. As to the address, the County has repeatedly conceded that applicants should *not* have to list their current residential address. Moreover, counsel for the County confirmed at oral argument here that the County plans to amend the provision in this regard. In the light of these concessions, it is *not* clear why the County raised the disclosure provision as an issue on appeal. In any event, we need *not* review this aspect of the district court's opinion. We understand the district court's holding as pertaining *only* to a current *residential* address and telephone number.

6.

20

The injunction provision held unconstitutionally overbroad states: "A person who *violates* [the Order] is subject to a suit to enjoin operation of the enterprise". (Emphasis added.) The provision authorizes the District Attorney "to file suit to enjoin violation of [the Order]". Relying on **Universal Amusement Co., Inc. v. Vance**, 587 F.2d 159, 168-73 (5th Cir. 1978), the district court held the provision overbroad because it "authorizes a suit to enjoin free speech" or "to enjoin ... protected activity". **LLEH**, 121 F. Supp. 2d at 527.

**Universal Amusement** concerned a statute that provided:

> The habitual use ... of any premises, place or building or part thereof, for any of the following uses shall constitute a public nuisance and shall be enjoined at the suit of either the State or any citizen thereof:
>
> ....
>
> (3) For the commercial manufacturing, commercial distribution, or commercial exhibition of obscene material[.]

587 F.2d at 165 n.11. Our court held the provision "unconstitutional insofar as it authorizes injunctions against the future exhibition of unnamed films[,] ... for it amounts to a prior restraint on materials *not yet declared obscene*". **Id.** at 169 (emphasis added).

**Universal Amusement** is inapposite. The provision at issue here authorizes suit to enjoin "violations" of the provisions upheld in this appeal. In the light of our above holdings, the risk of

21

actions seeking to enjoin "free speech" or "protected activity" is substantially diminished, if not eliminated, because we have concluded that the "speech" and "activity" at issue in the provisions is properly regulated. Any overbreadth in the injunction provision is not "substantial ... in relation to the [provision's] plainly legitimate sweep". *Broadrick v. Oklahoma*, 413 U.S. 601, 615 (1973).

## B.

Approximately $43,000 was awarded pursuant to 42 U.S.C. § 1988(b), which provides: "In any action or proceeding to enforce a provision of section [1983] of this title, the court, in its discretion, may allow the *prevailing party* ... a reasonable attorney's fee as part of the costs...." (Emphasis added.) The County requests that we either vacate the award or remand for reconsideration.

"[A] plaintiff 'prevails' when actual relief on the merits of his claim *materially alters* the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff". *Farrar v. Hobby*, 506 U.S. 103, 111-12 (1992) (emphasis added). In the light of our disposition of this appeal, the only points on which LLEH *might* be considered to have "prevailed" are: (1) in having the term "partially nude" adjudged vague (it is unclear whether the County conceded this at trial); (2) in having it adjudged that the County may not request a current

22

residential address, which it conceded pre-trial; and (3) in having a provision (not at issue here) pertaining to on-premises alcohol consumption adjudged preempted by Texas law, which the County also apparently conceded pre-trial. Because the district court is better suited to determine both whether LLEH is a prevailing party in the light of our resolution of this appeal and what, if any, fees would be reasonable, we vacate the award and remand for reconsideration.

III.

For the foregoing reasons, we **REVERSE** the district court's holdings as to the Order's location, buffer, stage-height, demarcation, unobstructed-view, and injunction provisions. We do not reach its holdings on either the vagueness of the term "partially nude" or the disclosure provision. We **VACATE** the fees and expenses award. This case is **REMANDED** for further proceedings consistent with this opinion, including entry of judgment on the merits and reconsideration of fees.

*JUDGMENT ON THE MERITS AFFIRMED in PART, REVERSED in PART;*
*JUDGMENT AWARDING ATTORNEY'S FEES and EXPENSES VACATED;*
*REMANDED*