United States Court of Appeals
Fifth Circuit

**F I L E D**

December 1, 2004

Charles R. Fulbruge III
Clerk

In the

# United States Court of Appeals
## for the Fifth Circuit

———————

m 04-30409
Summary Calendar

———————

ALMA C. STEWART,

Plaintiff-Appellant,

VERSUS

DEPARTMENT OF HEALTH AND HOSPITALS,

Defendant-Appellee.

———————

Appeal from the United States District Court
for the Middle District of Louisiana
m 3:02-CV-1117-C-M2

———————

Before DAVIS, SMITH, and DENNIS,
   Circuit Judges.

PER CURIAM:*

———————

* Pursuant to 5TH CIR. R. 47.5, the court has de-
termined that this opinion should not be published
and is not precedent except under the limited cir-
                              (continued...)

Alma Stewart sued the Louisiana Depart-
ment of Health and Hospitals ("DHH"), alleg-
ing race and sex discrimination, the mainte-
nance of a hostile work environment, and con-
structive discharge under title VII of the Civil
Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*

———————

*(...continued)
cumstances set forth in 5TH CIR. R. 47.5.4.

The district court granted DHH's motion for summary judgment, and Stewart appeals, contending that there are genuine issues of material fact. We affirm, albeit for reasons that are in some respects different from those relied on by the district court.

## I.

Stewart began her career with DHH in 1975, first as a registered nurse, and eventually moved up through the ranks of the department's civil service employees, finally in 1996 being named deputy assistant secretary in the Office for Citizens with Developmental Disabilities ("OCDD"). At pay grade GS-28, Stewart was the highest ranking black female civil service employee at DHH. Within a few years, Kendrick Hodge, a white male, was made a "co-deputy" with Stewart.

In February 2001, Stewart was transferred from OCDD to a position that she alleges was not comparable to, and was inferior to, her former position; Hodge remained in his position at OCDD. Stewart claims she was uncertain as to the nature and responsibilities of her new position and as to whom she was to report to. Stewart claims that this transfer, among other acts and practices, is an adverse employment action with discriminatory purpose.

Stewart further alleges that she was denied the opportunity to take leave from her position in Louisiana to work temporarily at the District of Columbia Administration on Mental Retardation and Developmental Disabilities; she was granted one month's leave instead of the six that she requested. After she was unable to extend the leave, Stewart returned to Louisiana, where she was given a list of tasks that she claims were beneath her level of expertise and were more appropriate for a more junior employee.

Still hoping to return to Washington, Stewart retained counsel to help negotiate a further period of leave. These negotiations yielded an agreement by which she would take administrative leave from October 15, 2001, to May 11, 2002, at which time she would resign. She accepted that proposal and did resign.

## II.

In granting summary judgment, the district court did not issue a written opinion, but instead orally explained its reasoning at the motion hearing, finding that even if Stewart could demonstrate a *prima facie* case of discrimination under title VII, DHH had put forth legitimate non-discriminatory reasons for its actions. The court did not find that there was any evidence refuting these explanations, so Stewart could not demonstrate any discriminatory purpose. The court further held that Stewart could not maintain her hostile work environment claim in that she had failed to establish that she was subjected to any unwelcome harassment, let alone that such harassment was based on her race or sex. Lastly, the court concluded that Steward had resigned voluntarily and that the circumstances did not support her allegation of constructive discharge.

## III.
### A.

We review a summary judgment *de novo* and are bound by the same standards that guide the district court. *See Chaplin v. NationsCredit Corp.*, 307 F.3d 368 (5th Cir. 2002). Summary judgment is appropriate where "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' when viewed in the light most favorable to the non-movant,

2

'show that there is no genuine issue as to any material fact.'" *TIG Ins. Co. v. Sedgwick James,* 276 F.3d 754, 759 (5th Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986)). Once the moving party has demonstrated that the non-moving party has no evidence such that a reasonable jury could support a verdict in its favor, the non-moving party must put forth specific facts that demonstrate a genuine factual issue for trial. *Id.*

B.

Stewart must establish a *prima facie* case that she (1) was a member of the protected class; (2) was qualified for her job; (3) suffered an adverse employment action; and (4) was replaced by someone outside the protected class. According to *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973), once this *prima facie* case is made, DHH must demonstrate a legitimate nondiscriminatory reason for its action.

At that point, the burden returns to Stewart to show that the offered explanation is mere pretext and that there was intentional discrimination. *Id.* Further, demonstrating the falsity of a proffered non-discriminatory explanation may suffice to satisfy the plaintiff's burden.[1] Accordingly, if Stewart can show genuine issues of material fact as to whether she can establish a *prima facie* case and a genuine issue of fact as to the veracity of DHH's non-discriminatory explanation, she will survive sum-mary judgment on the merits.

Normally, we would evaluate the district court's assessment of the case based on this methodology. The parties are very much in dispute as to whether Stewart has demonstrated at least a genuine issue of fact with respect to the veracity of DHH's explanations. It turns out, however, that we can decide this case on a much easier ground: the fact that this action is time-barred, as we will explain.

C.

Although DHH argued the time bar in the district court, the court did not address that issue in its oral explanation. "We may affirm for any reason supported by the record, even if not relied upon by the district court." *LLEH, Inc. v. Wichita County, Tex.,* 289 F.3d 358, 364 (5th Cir. 2002)

DHH points out that a charge of discrimination under title VII must be filed within 300 days after its occurrence. 42 U.S.C. § 2000e-5(e)(1). Stewart was transferred on February 19, 2001, yet did not file her EEOC complaint until April 3, 2002SSwell outside the statutorily mandated period. The other adverse employment actions of which Stewart complains occurred before June 7, 2001, including her claims of inadequate working conditions and her being placed in a less prestigious role with unclear responsibilities, and therefore were not complained of timely.

Stewart in no way refutes this argument. In her reply brief, she essentially abandons her claims based on these discrete acts and argues that these allegedly adverse actions may be considered in evaluating her claim based on a hostile work environment. Citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 105 (2002), Stewart argues that we may con-

---

[1] *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148, (2000) ("Thus, a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated.").

sider "the entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period," so long as at least one of the alleged acts contributing to hostile environment occurred within the statutory time period. This argument is entirely unhelpful, however, to Stewart's claims for discrete acts of discrimination, and therefore the district court's decision with respect to those claims is affirmed, and we will move on to consider Stewart's other theories.

### D.

To make out a claim under a hostile work environment theory, a plaintiff must prove that the "workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys. Inc.*, 510 U.S. 17, 21 (1993) (citations and quotations omitted). Whether conduct rises to a sufficient level of abusiveness or hostility based on a discriminatory intent "depends on a totality of circumstances, focusing on factors such as the frequency of the conduct, the severity of the conduct, the degree to which the conduct is physically threatening or humiliating, and the degree to which the conduct unreasonably interferes with an employee's work performance." *Long v. Eastfield College*, 88 F.3d 300, 309 (5th Cir. 1996).

Stewart has not produced any evidence supporting such a claim. In its oral explanation, the district court found there was an absence of any evidence displaying race- or sex-based ridicule, intimidation, or insults, "either in the form of comments, derogatory statements, epithets, or what have you." Stewart conceded, in deposition, that she did not even begin to contemplate that there might have

been a discriminatory motive behind the alleged adverse actions until she was about to resign. There is no evidence that the workplace environment was made intolerable because of race- or sex-based action, so summary judgment was proper on Stewart's hostile work environment claim.

### E.

Stewart's final claim is based on constructive discharge. This claim requires evidence of discharge as part of the plaintiff's *prima facie* case; without such a showing, the existence of discriminatory purpose or pretext is wholly irrelevant. *Barrow v. New Orleans S.S. Ass'n*, 10 F.3d 292, 297 (5th Cir. 1994). Such a claim requires evidence that the "working conditions [were] so intolerable that a reasonable employee would feel compelled to resign." *Id.* In evaluating such a charge, the court will consider, *inter alia*, whether the plaintiff suffered (1) demotion; (2) reduction in salary; (3) reduction in responsibility; (4) reassignment to work under a supervisor who is younger and less experienced; (5) harassment; (6) assignment to menial tasks; and (7) offers to accept early retirement that would make the plaintiff worse off. *Id.* Stewart argues that she has raised genuine issues of material fact with respect to factors (3), (5), (6), and (7).

Stewart overlooks the fact that her resignation was carefully negotiated by her private counsel. As the district court correctly noted, this negotiation yielded her 300 hours of paid administrative leave. Such conditions can hardly be described as constituting an involuntary termination that resulted from intolerable working conditions. "Stated more simply, [plaintiff's] resignation must have been reasonab[ly compelled] under all the circumstances." *Id.* Stewart's resignation was perfectly reasonable, not because working conditions were

4

intolerable, but because she voluntarily chose to accept a favorable severance package.

The district court noted that Stewart's situation was that "she's got less work and no boss . . . . Sounds like a raise to me." Such is not the stuff of which constructive discharges are made.[2] Because Stewart's resignation cannot therefore be accurately characterized as compelled, summary judgment is appropriate on that claim.

### F.

DHH seeks attorney's fees as a prevailing party under 42 U.S.C. § 2000-5(K). DHH also sought attorney's fees in the district court as part of its summary judgment motion, but apparently that court never ruled on DHH's request. In its oral assignment of reasons, the court stated with respect to the request for attorney's fees, "I'll worry about that at a later date." Notwithstanding that comment, the court entered a judgment in which it dismissed all pending motions as moot.

Under title VII, a prevailing party may be awarded attorney's fees at the discretion of the court. 42 U.S.C. § 2000e-5(k). According to *Christianburg Garment Co. v. EEOC*, 434 U.S. 412, 421 (1978), prevailing defendants may recover such fees only where the court finds that "the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith."[4]

Normally we will not disturb the district court's decision absent a clear abuse of discretion. *See EEOC v. Tarrant Distrib. Inc.*, 750 F.2d 1249, 1251 (5th Cir. 1984). Here, however, it does not appear that the court ever considered the defendant's request. We conclude that it would be an abuse of discretion to award fees here, because the claim is not frivolous to the extent that fees would be justified under the standards in the statute and caselaw. Therefore, it is not necessary to remand for determination of the appropriateness of fees.

AFFIRMED.

---

[2] *See McCann v. Litton Sys., Inc.,* 986 F.2d 946, 952 (5th Cir. 1993) (finding a "slight decrease in pay coupled with a loss of some supervisory responsibilities" insufficient to constitute constructive discharge).

[4] *See also Dean v. Riser*, 240 F.3d 505, 508 (continued...)

---

[4](...continued) (5th Cir. 2001) ("Thus, attorney's fees for prevailing defendants are presumptively unavailable unless a showing is made that the underlying civil rights suit was vexatious, frivolous, or otherwise without merit.").