MILLENNIUM RESTAURANTS GROUP, INC., d/b/a Cabaret Royale, et al., Plaintiffs,

and

Clubco Mgmt., Inc. d/b/a Dallas Gentlemen's Club, et al., Intervenors,

v.

CITY OF DALLAS, TEXAS, et al., Defendants.

No. CIV.A.3:01–CV–0857–G.

United States District Court, N.D. Texas, Dallas Division.

Feb. 21, 2002.

---

John A. Koepke, A. David Gross, Jackson Walker, Dallas, TX, Steven Hershey Swander, Law Office of Steven H. Swander, Fort Worth, TX, Roger Earl Albright, Law Office of Roger Albright, Dallas, TX, for Plaintiffs.

Doreen E. McGookey, Dallas City Attorney's Office, Dallas, TX, Arthur F. Selan-

der, Quilling Selander Cummiskey & Lownds, Dallas, TX, for Defendants.

## MEMORANDUM ORDER

FISH, Chief Judge.

Before the court is the motion of plaintiffs Millennium Restaurants Group, Inc. d/b/a Cabaret Royale ("Millennium") and Steven Craft ("Craft") (collectively, "Millennium") for summary judgment on their claim for a permanent injunction against the City of Dallas ("the City") and against Dallas Chief of Police Terrell Bolton ("Bolton").[1] For the reasons discussed below, the motion for summary judgment is granted.

## I. BACKGROUND[2]

Millennium is an existing licensed adult cabaret operating in a conforming location under Chapter 41A of the Dallas City Code, the provision which governs "Sexually Oriented Businesses" ("Chapter 41A"). Plaintiffs' Brief in Support of Motion for Summary Judgment and Permanent Injunction ("MSJ") at 3; Plaintiffs' and Intervenors' Appendix in Support of Findings of Fact and Conclusions of Law and Brief in Support of Preliminary Injunction ("Plaintiffs' Appendix") at 40, 43. Millennium or its predecessors have operated a licensed adult cabaret since 1988. MSJ at 3; Plaintiffs' Appendix at 41. Millennium does business as Cabaret Royale, located at 10723 Composite Drive, Dallas, Texas. MSJ at 3; Plaintiffs' Appendix at 40–41, 43. Craft, an officer of Millennium, holds the license under which Millennium operates as an adult cabaret. MSJ at 3; Plaintiffs' Appendix at 40, 43.

On or about April 17, 2001, the City issued a letter to Cabaret Royale revoking its license under Chapter 41A to operate as a sexually oriented business. MSJ at 4; Chapter 41A, § 41A–10.1, Plaintiffs' Appendix at 44–45. The revocation would have become effective on May 17, 2001 if a temporary restraining order prohibiting revocation had not issued in this case. MSJ at 4; Plaintiffs' Appendix at 14, 44–45. The revocation letter cited Chapter 41A, § 41A–10 as the basis for revocation of the license, specifically referring to the convictions of four entertainers at Cabaret Royale for public lewdness on the premises. MSJ at 4; Plaintiffs' Appendix at 44–45.

An "adult cabaret" is defined in Chapter 41A, § 41A–2(4) as

a commercial establishment that regularly features the offering to customers of live entertainment that:

(A) is intended to provide sexual stimulation or sexual gratification to such customers; and

(B) is distinguished by or characterized by an emphasis on matter depicting, simulating, describing, or relating to "specified anatomical areas" or "specified sexual activities."[3]

*Id.*, Plaintiffs' Appendix at 2; MSJ at 4.

Millennium offers performances of erotic dancing to its customers. MSJ at 4; Plaintiffs' Appendix at 40–41, 61. The female performers dance topless and wear G-strings. MSJ at 4; Plaintiffs' Appendix at 40, 61.

---

1. Although Millennium styled its motion a "Motion for Summary Judgment and Permanent Injunction," it is actually a motion for summary judgment on Millennium's claim for a permanent injunction.

2. The defendants do not include a factual summary in their response to Millennium's

motion for summary judgment. The court has therefore relied heavily on Millennium's statement of the case.

3. Both "specified anatomical areas" and "specified sexual activities" are terms defined by Chapter 41A. *See* Chapter 41A, §§ 41A–2(29) and (30), Plaintiffs' Appendix at 5–6.

Based on an ostensible concern for the effect that a sexually oriented business such as the one operated by Millennium can have on surrounding neighborhoods, Chapter 41A imposes significant obstacles to the opening of adult cabarets and other establishments featuring erotic entertainment and expression. MSJ at 4; Plaintiffs' Appendix at 7, 8, 15. There are, among other things, restrictions on lawful locations for such businesses (Sec. 41A–13), special licensing requirements (Sec. 41A–4), and limitations on the individuals who may hold licenses (Sec. 41A–5). MSJ at 4–5; Chapter 41A, Plaintiffs' Appendix at 15, 7, and 7–10, respectively. Millennium has met all of the statutory requirements for the presentation of erotic dance to the public and it has done so continually and lawfully for years. MSJ at 5; Plaintiffs' Appendix at 61–62.

The City proposes to revoke Millennium's license on the basis of § 41A–10(b)(6) of Chapter 41A, a provision of the Sexually Oriented Business Ordinance which states:

(b) The chief of police shall revoke a license if the chief of police determines that one or more of the following is true:

\* \* \* \* \* \*

(6) On two or more occasions within a 12–month period, a person or persons committed an offense occurring in or on the licensed premises of a crime listed in Section 41A–5(a)(8)(A)[4] for which a conviction has been obtained, and the person or persons were employees of the sexually oriented business at the time the offenses were committed.

MSJ at 5; Plaintiffs' Appendix at 12–13.

This section, under which the City has acted, does not require that the license holder have knowledge of an employee's violation of the law. Section 41A–21(b) provides that "[e]xcept where otherwise specified, a culpable mental state is not required for the commission of an offense under this chapter." MSJ at 5, n. 4; Plaintiffs' Appendix at 24. Nor does the section require that the licensee have been negligent in failing to adequately instruct or supervise employees in avoiding lewd conduct as part of their erotic dance. MSJ at 5–6; Plaintiffs' Appendix at 13, 24. Rather, the ordinance calls for the automatic revocation of the license without permitting any inquiry into the culpability of the licensee for the unlawful conduct. MSJ at 6; Plaintiffs' Appendix at 12–13, 24. Whether the licensee used efforts to train the dancers or prevent violations is not to be considered by the chief of police. MSJ at 6; Plaintiffs' Appendix at 12–13, 24. Chapter 41A confers no discretion on the chief of police; rather, it orders him to revoke the license after two violations. MSJ at 6; Plaintiffs' Appendix at 12–13, 24.

This statutory indifference to the culpability of the licensee is carried over into the operation of the ordinance in practice. MSJ at 6; Plaintiffs' Appendix at 13, 24, 57–58. A dancer who has accused of violating the ordinance is sent a notice by mail of a misdemeanor violation. MSJ at 6; Plaintiffs' Appendix at 58. The license holder is not given notice of the first, or of any subsequent, citation. MSJ at 6; Plaintiffs' Appendix at 57–58. Once two convictions have been obtained, the chief of police must revoke the license. MSJ at 5; Chapter 41A, § 41A–10(b)(6), Plaintiffs' Appendix at 12–13.

All of the convictions for public lewdness on which the City proposed to revoke the license at issue here were based on conduct occurring during the course of a

---

**4.** Section 41A–5(a)(8)(A)(ii)(aa) defines public lewdness as an actionable offense. MSJ at 5, n. 3; Plaintiffs' Appendix at 8–9.

dance performance. MSJ at 7; Plaintiffs' Appendix at 61. The conduct involved was protected expression which at some point crossed the line from lawful to unlawful.

## II. *ANALYSIS*

### A. *Evidentiary Burdens on Motion for Summary Judgment*

Summary judgment is proper when the pleadings and evidence on file show that no genuine issue exists as to any material fact and that the moving parties are entitled to judgment as a matter of law. FED. R. CIV. P. 56(c).[5] "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving part[ies]." *Id.* The movants make such a showing by informing the court of the basis of their motion and by identifying the portions of the record which reveal there are no genuine material fact issues. *Celotex Corporation v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The pleadings, depositions, admissions, and affidavits, if any, must demonstrate that no genuine issue of material fact exists. FED. R. CIV. P. 56(c).

Once the movants make this showing, the nonmovants must then direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 323–24, 106 S.Ct. 2548. To carry this burden, the "opponent[s] must do more than simply show . . . some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Company, Ltd. v. Zenith Radio Corporation*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Instead, the nonmovants must show that the evidence is sufficient to support a resolution of the factual issue in their favor. *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505.

While all of the evidence must be viewed in a light most favorable to the motion's opponents, *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505 (citing *Adickes v. S.H. Kress & Company*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)), neither conclusory allegations nor unsubstantiated assertions will satisfy the non-movants' summary judgment burden. *Little v. Liquid Air Corporation*, 37 F.3d 1069, 1075 (5th Cir.1994) (en banc); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir.), *cert. denied*, 506 U.S. 825, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992).

### 1. *The City's Attempt to Revoke Millennium's License Constitutes an Unconstitutional Prior Restraint of First Amendment Rights*

Millennium contends, as it did in its motion for preliminary injunction, that § 41A–10(b)(6) of Chapter 41A must be declared unconstitutional because the attempt by the City to revoke Millennium's license, based on past performances by entertainers, is an unconstitutional prior restraint on freedom of expression. MSJ at 7.

In *Universal Amusement Company, Inc. v. Vance*, 587 F.2d 159 (5th Cir.1978) (en banc), *aff'd*, 445 U.S. 308, 100 S.Ct. 1156, 63 L.Ed.2d 413 (1980), the Fifth Circuit noted that "[a] prior restraint of expression comes before [the] court with 'a heavy presumption against its constitutional validity.'" *Id.* at 165, citing *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70, 83 S.Ct. 631, 9 L.Ed.2d 584 (1963). In *Vance*,

---

**5.** The disposition of a case through summary judgment "reinforces the purpose of the Rules, to achieve the just, speedy, and inexpensive determination of actions, and, when appropriate, affords a merciful end to litigation that would otherwise be lengthy and expensive." *Fontenot v. Upjohn Company*, 780 F.2d 1190, 1197 (5th Cir.1986).

the Fifth Circuit considered an effort by Texas authorities to close an adult theater for one year as a public nuisance on the basis of its showing of legally obscene, and therefore unprotected, material. The court, in language directly applicable to the present situation, found that the use of the nuisance statutes to accomplish this end would be unconstitutional, holding that:

Read together, Articles 4666 and 4667 clearly create a prior restraint. The statutes allow the state to close, for one year, a theatre that has exhibited obscene films. Unless a bond from $1,000 to $5,000 is posted, the showing of *any* motion picture is punishable by contempt of court. Thus, future conduct that may fall within the purview of the first amendment is absolutely prohibited after a finding of unprotected present conduct. It was precisely this practice that was condemned by the Supreme Court in the landmark case of *Near v. Minnesota*, 283 U.S. 697, 51 S.Ct. 625, 75 L.Ed. 1357 (1931). Moreover, although a theater operator may post the bond and show films, he forfeits that bond if one of the films he has selected is deemed obscene. This statutory scheme obviously encourages a theater operator to steer wide of the danger zone by avoiding borderline films that are nonetheless protected under the first amendment. The line between obscenity and protected speech is "dim and uncertain," *Bantam Books, supra*, 372 U.S. at 66, 83 S.Ct. 631, and difficulty in locating that line leads to self-censorship, a particularly subtle and most insidious form of the malady.

*Vance*, 587 F.2d at 165–66 (emphasis in original) (footnote omitted).

■ The court agrees with Millennium's assertion that the license revocation procedure at issue here brings it within the ambit of *Vance*. As in *Vance*, the City proposes to prevent a business operator's full exercise of First Amendment freedoms going forward, on the basis of past instances in which expression offered by the business has crossed the line from lawful to unlawful.[6] Plaintiffs' and Intervenors' Brief in Support of Motion for Preliminary Injunction ("PI Motion") at 11; see also *Gayety Theatres, Inc. v. City of Miami*, 719 F.2d 1550, 1552 (11th Cir.1983) (holding that a city could not use past conduct to enjoin future protected speech).

The City argues that *Vance* does not apply to this situation and points out that the "owner or operator remains free to open another business and still engage in protected activity." Brief in Support of Defendant's Response to Plaintiffs' Motion for Summary Judgment and for Permanent Injunction ("MSJ Response") at 7. Contrary to the City's assertion, however, Section 41A–10(e) provides:

When the chief of police revokes a license, the revocation will continue for one year, and the licensee shall not apply for or be issued a sexually oriented business license for one year after the date the revocation became effective.

*Id.;* Plaintiffs' Appendix at 14.

Millennium has also shown that the license revocation at issue here is not justified under *United States v. O'Brien*, 391 U.S. 367, 377, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968). PI Motion at 14. Content

---

6. The continuing validity of the Fifth Circuit's decision in *Vance* and its relevance to erotic dancing was expressly acknowledged last year in Chief Judge Buchmeyer's opinion in *LLEH, Inc. v. Wichita County, Texas*, 121 F.Supp.2d 513 (N.D.Tex.2000), which struck down an injunction provision in a local ordinance governing erotic dancing on the authority of *Vance*, on the ground that it would constitute "an unconstitutional prior restraint of free expression entitled to protection under the First Amendment." 121 F.Supp.2d at 527.

neutral regulations burdening expressive activity, such as the ordinance at issue, must be judged under the four-factor test of *O'Brien.*

■ The *O'Brien* test states that a content neutral ordinance survives constitutional challenge, despite its adverse impact on the exercise of First Amendment rights, when (1) it is within the constitutional power of the government; (2) it furthers an important or substantial governmental interest; (3) the asserted governmental interest is unrelated to the suppression of free expression; and (4) the incidental restrictions on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest. 391 U.S. at 377, 88 S.Ct. 1673. Millennium contends that the use of employee convictions to revoke a sexually oriented business license violates the principles of *O'Brien,* because no showing of knowledge, culpable state of mind, or even negligence on the part of the licensee is required before suspension or revocation of the license. PI Motion at 15.

While Millennium concedes that the City has the authority to license sexually oriented businesses, it argues that the City's regulations in this case do not pass muster under the third and fourth prongs of *O'Brien.* The third prong of *O'Brien* is violated when the governmental interest is related to the suppression of free expression. 391 U.S. at 377, 88 S.Ct. 1673. The court finds that the strict liability feature of the ordinance is constitutionally suspect because it does not relate to or further the governmental interest of assuring law abiding licensees.

The fourth prong of *O'Brien* is likewise violated because the regulation in question is not narrowly tailored to do only what is necessary to achieve a substantial governmental interest. *Id.* Revocation of a business license based on two convictions of employees for public lewdness over a one year period, without requiring any knowledge on the part of management, is a greater restriction on free expression than is essential to furtherance of the governmental interest because the predicate offenses do not tend to show that management is careless, reckless, or incompetent.

In its response to Millennium's motion for summary judgment, the City does not offer any evidence that was not available to the court when analyzing Millennium's motion for preliminary injunction. The City reiterates the position it took in response to the motion for preliminary injunction, which the court did not then, and does not now, find persuasive.[7] Therefore the court finds that the City's proposed revocation of Millennium's license operates as an unconstitutional prior restraint on First Amendment rights.

### 2. *Respondeat Superior Liability*

■ Additionally, the City defends the license revocation scheme at issue here as a system of justified punishment under a theory of *respondeat superior.* MSJ Response at 16. The City argues that Millennium and others whose licenses are procured through the ordinance should be held strictly liable through a theory of *respondeat superior* because the ordinance violations are public welfare crimes. *Id.* The City urges that *respondeat superior* liability is a familiar concept in the context of "public welfare" crimes—those that pose a special risk to public health or safety. *Id.* Criminal liability based on *respondeat superior* is acceptable, according to the City (*Id.*), if the defendant is in a

7. The City reiterates its objection to various pieces of evidence relied on by Millennium and adds further objections to other evidence. The court has reviewed the City's objections, along with all of the available evidence, and finds that the allegedly objectionable evidence need not be considered in deciding this motion.

" 'responsible relation' to the unlawful conduct or omission, but only if the penalty does not involve imprisonment." *Lady J. Lingerie, Inc. v. City of Jacksonville*, 176 F.3d 1358, 1367 (11th Cir.1999), *cert. denied*, 529 U.S. 1053, 120 S.Ct. 1554, 146 L.Ed.2d 459 (2000). To support this assertion, the City relies on *United States v. Park*, 421 U.S. 658, 95 S.Ct. 1903, 44 L.Ed.2d 489 (1975), and *Lady J. Lingerie, Inc. v. City of Jacksonville*, 176 F.3d 1358, 1367 (11th Cir.1999), *cert. denied*, 529 U.S. 1053, 120 S.Ct. 1554, 146 L.Ed.2d 459 (2000). Neither of these cases, however, involved judicial approval of restrictions on the future exercise of First Amendment rights. *Respondeat superior* has never been applied, so far as the court can determine, in the context the City urges. Furthermore, Section 41A–10(b)(6) does not involve criminal sanctions. The court declines to create new law that would hold license holders liable under a theory of *respondeat superior.*

### 3. Liability of the Chief of Police

█ Second, the City asserts that because Bolton's qualified immunity defense has not been overcome, Millennium has failed to state a claim upon which relief can be granted. MSJ Response at 18. The City, however, misapprehends the doctrine of qualified immunity. "[Q]ualified immunity is not a defense to [a plaintiff's] claims for declaratory and injunctive relief[.]" See *Yates v. Stalder*, 217 F.3d 332, 333, n. 2 (5th Cir.2000). Furthermore, Bolton is being sued in his *official* capacity, not as an individual, to enjoin him from acting as directed by a Dallas City ordinance. In actions against public officials in their official capacities, the doctrine of qualified immunity plays no part, prohibiting neither the grant of injunctive relief, nor the award of attorney's fees. See *Jackson v. Galan*, 868 F.2d 165, 168 (5th Cir.1989) (holding that attorney's fees may be awarded against a public official

even when the official is immune from money damages); see also *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 700, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) ("Indeed, municipalities simply cannot 'arrange their affairs' on an assumption that they can violate constitutional rights indefinitely since injunctive suits against local officials under § 1983 would prohibit any such arrangement.") Therefore, for the reasons discussed, Bolton's assertion of qualified immunity is inapplicable.

### B. Millennium's Motion for Permanent Injunction

█ The standard for a permanent injunction is "essentially the same" as for a preliminary injunction, in that the plaintiff must show (1) the existence of a substantial threat of irreparable harm that outweighs any harm the relief would accord to the defendants, (2) that there is no adequate remedy at law, and (3) that granting the injunction will not disserve the public interest. See *Calmes v. United States of America*, 926 F.Supp. 582, 590 (N.D.Tex. 1996). To justify a permanent injunction, however, the plaintiff must demonstrate actual success on the merits, rather than a likelihood of success. *Id.* at 591. As discussed above, Millennium has demonstrated actual success on the legal merits with respect to its First Amendment challenges to Chapter 41A.

█ As for irreparable injury to Millennium, the court reiterates the position it stated in granting Millennium's motion for preliminary injunction. "[O]nly those injuries that cannot be redressed by the application of a judicial remedy after a hearing on the merits can properly justify a preliminary injunction." *Canal Authority of State of Florida v. Callaway*, 489 F.2d 567, 573 (5th Cir.1974). Millennium claims it would suffer irreparable injury to its con-

stitutional rights if the injunction is not granted. The court agrees with Millennium's assertion that the topless dancing featured at their cabarets is expressive conduct "within the outer ambit of the First Amendment's Protection." *City of Erie v. Pap's A.M.*, 529 U.S. 277, 289, 120 S.Ct. 1382, 146 L.Ed.2d 265 (2000); *Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 566, 111 S.Ct. 2456, 115 L.Ed.2d 504 (1991). Further, when a case involves infringement of First Amendment rights, there is a strong presumption that the plaintiff will be irreparably injured if an injunction is not issued. *Elrod v. Burns*, 427 U.S. 347, 373, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."). Thus, the court finds that Millennium has shown that it would suffer irreparable injury if the injunction were not granted. Millennium has further shown that the threatened harm to it—the closing of its business and infringement upon its First Amendment rights—outweighs the harm to the City. The City alleges that there will be potential secondary effects from the granting of an injunction, such as a rise in criminal public lewdness and prostitution. The court, however, agrees with Millennium, MSJ at 17, that a halt to the license revocations would pose a minimal threat to the City. Just as the City has amended Chapter 41A in the past, so it may amend the ordinance again to comply with the First Amendment. Furthermore, the City has police power to help control the secondary effects of adult establishments. The injunction granted herein does not, for example, prohibit the City from arresting entertainers or anyone else who violates the city ordinance prohibiting "lewd conduct" or violates any other law in or on Millennium's premises.

Finally, the court finds that Millennium has shown that granting the injunction will not disserve the public interest. The City argues that the public interest will be disserved because the City has an important governmental interest in ensuring that sexual criminal conduct does not occur on the premises of a sexually oriented business, and that if this injunction is granted, the owners and operators of sexually oriented businesses would be free to permit this conduct to occur on their premises without any threat of losing their license to operate. MSJ Response at 22. The court disagrees. As discussed above, the granting of a permanent injunction does not prevent the police from arresting those who violate the City Code or state law by engaging in criminal activity at the establishments owned and/or operated by Millennium. Nor does the granting of an injunction prevent the City from amending Chapter 41A to comply with the First Amendment.

## III. *CONCLUSION*

For the reasons discussed above, Millennium's motion for summary judgment on its claim for permanent injunction against the City and Bolton is **GRANTED.** Within fifteen days of this date, counsel for the plaintiff shall submit a proposed form of judgment in conformity with this memorandum order.

Furthermore, Millennium is entitled to attorneys' fees under 42 U.S.C. §§ 1983 and 1988. Counsel shall confer to see if agreement on the amount of such fees can be reached. If agreement is possible, counsel shall submit, within fifteen days of this date, an agreed order requiring payment by the City in the amount agreed upon. If agreement is not possible, counsel for Millennium shall submit, within fifteen days of this date, a motion for the award of such fees, supported by affidavit and any necessary documentation. The

timing of any response or reply will be governed by the local rules of this court.

**SO ORDERED.**