[No. D045332. Fourth Dist., Div. One. Jan. 23, 2006.]

DONALD V. KRONTZ, Plaintiff and Appellant, v.
CITY OF SAN DIEGO, Defendant and Respondent;
WILLIAM LANSDOWNE, as Chief of Police, etc., Real Party in Interest
and Respondent.

1130

**COUNSEL**

A. Dale Manicom for Plaintiff and Appellant.

Michael J. Aguirre, City Attorney, and Mary T. Nuesca, Deputy City Attorney, for Defendant and Respondent and for Real Party in Interest and Respondent.

**OPINION**

**McCONNELL, P. J.**—The primary issue in this case is whether the government may suspend the permit of a business engaged in activity protected by the First Amendment as a sanction when the business violates a regulation. We conclude suspension of the license is not an improper prior restraint, is constitutionally permissible, and the government is not limited to imposing a fine. We also reject the argument that the suspension process utilized here violated appellant's constitutional guarantee of due process.

### FACTS

Donald V. Krontz holds a police permit to operate a nude entertainment establishment, Déjà Vu, on Midway Drive in San Diego. The City of San Diego and the San Diego Chief of Police (together the City) enforce permit regulations.

■ The San Diego Municipal Code (Municipal Code) requires a number of businesses including nude entertainment establishments, auto dismantlers, and ticket brokers to obtain a police permit. (Mun. Code, ch. 3.) The Municipal Code provides any business permittee who "[v]iolates or allows the violation of . . . any law or regulation pertaining to the business" is subject to suspension of the permit. (Mun. Code, § 33.0403, subds. (a)(1), (b)(5), italics omitted.)

■ Among the operating requirements applicable to a nude entertainment permit are that the permittee (1) "shall not permit or allow any person who is nude to be within six feet of any patron" (six-foot rule) (Mun. Code,

§ 33.3609, subd. (c), italics omitted) and "shall not allow any adult entertainer to intentionally touch any patron, or any patron to intentionally touch any adult entertainer, whether or not the adult entertainer is nude" (the no-touch rule) (Mun. Code, § 33.3609, subd. (d), italics omitted).

Between April 2001 and January 2002, the police conducted a number of undercover inspections at Déjà Vu. They observed at least 35 violations of the no-touch or six-foot rule involving a number of different entertainers. Krontz was sent written warning letters notifying him of the violations on May 2, August 16 and October 11, 2001. On October 26, Krontz's attorney and representative met with San Diego police vice officers to discuss the violations. They were informed of three additional inspections and further violations, some of which occurred on the center stage and could not have been overlooked by Déjà Vu's management. Krontz was sent written notice of these violations and a summary of the October 26 meeting.

After additional violations involving multiple entertainers were found during inspections in early January 2002, the City notified Krontz his nude entertainment permit would be suspended for 10 days based on the numerous and ongoing violations. The City also informed him of his right to an administrative hearing. (Mun. Code, § 33.0501.) Krontz requested a hearing.

The hearing officer concluded all but three of the violations were proven and that "[t]he preponderance of evidence suggests [Déjà Vu] made every effort to appear to be taking the no touch and six foot rules seriously but at the same time in daily practice tolerated violations on a regular basis unless the [Police] Department got involved and notified it of violations." The hearing officer, based on mitigating circumstances, reduced the suspension to seven days.

Krontz challenged the suspension by timely filing a petition for writ of administrative mandamus in superior court. The court denied the petition and Krontz appealed.

## DISCUSSION

### I

*Permit Suspension*

Krontz contends suspending his permit amounts to an invalid prior restraint, is an unconstitutional time, place, and manner restriction or is a

constitutionally impermissible injunction violating the First Amendment of the United States Constitution.[1]

■ Nude or semi-nude entertainment is expressive activity that falls within the ambit of the First Amendment. (See *City of Erie v. Pap's A.M.* (2000) 529 U.S. 277, 289 [146 L.Ed.2d 265, 120 S.Ct. 1382] (*Erie*); *Barnes v. Glen Theatre, Inc.* (1991) 501 U.S. 560 [115 L.Ed.2d 504, 111 S.Ct. 2456] (*Barnes*); *Morris v. Municipal Court* (1982) 32 Cal.3d 553, 564–565 [186 Cal.Rptr. 494, 652 P.2d 51].) However, "nude dancing . . . falls only within the outer ambit of the First Amendment's protection." (*Erie, supra,* at p. 289; see also *Barnes, supra,* at p. 566 ["[N]ude dancing of the kind sought to be performed here is expressive conduct within the outer perimeters of the First Amendment, though we view it as only marginally so"].)

A city can enact time, place, and manner regulations on an adult entertainment business based on the secondary effects of nude entertainment such as increased crime in a neighborhood. (See *Erie, supra,* 529 U.S. 277, 296; Hansen, *To Strip or not to Strip: The Demise of Nude Dancing and Erotic Expression Through Cumulative Regulations* (2001) 35 Val.U. L.Rev. 561.) Thus, the courts have upheld restrictions on the location of nude entertainment establishments through zoning laws (see *City of National City v. Wiener* (1992) 3 Cal.4th 832, 835 [12 Cal.Rptr.2d 701, 838 P.2d 223]), licensing requirements (*Genusa v. City of Peoria* (1980) 619 F.2d 1203, 1213; *Schultz v. City of Cumberland* (7th Cir. 2000) 228 F.3d 831, 853; *Essence, Inc. v. City of Fed. Heights* (10th Cir. 2002) 285 F.3d 1272, 1289–1290), and restrictions such as the no-touch and six-foot rules enacted in San Diego (see *Tily B., Inc. v. City of Newport Beach* (1998) 69 Cal.App.4th 1, 22–23 [81 Cal.Rptr.2d 6]; *Hang On, Inc. v. City of Arlington* (5th Cir. 1995) 65 F.3d 1248, 1254).

### (A) Prior Restraint

Notably, Krontz does not challenge the no-touch or six-foot rules or challenge the requirement that he obtain a permit to operate a nude entertainment business. Nor does Krontz challenge the sufficiency of the evidence to support the findings he allowed violations of the no-touch and six-foot rules at Déjà Vu. Instead, Krontz argues the sanction of permit suspension is an improper prior restraint because it not only prevents the nonprotected activity (violations of the no-touch and six-foot rules), it also prevents any expressive activity that is protected by the First Amendment. He argues the City is limited to imposing a fine.

---

[1] Krontz devotes several pages of his opening brief arguing he has "standing to vindicate the First Amendment rights of his business, its employees, entertainers and patrons in this proceeding." The City does not dispute Krontz's standing.

■ "The term 'prior restraint' is used 'to describe administrative and judicial orders forbidding certain communications when issued in advance of the time that such communications are to occur.' " (*Alexander v. United States* (1993) 509 U.S. 544, 550 [125 L.Ed.2d 441, 113 S.Ct. 2766], italics omitted.) A licensing scheme may constitute an unconstitutional prior restraint if it puts unbridled discretion in the hands of government officials charged with granting or denying licenses or allows the decision maker unlimited time to render a decision on the matter affecting the license; to be constitutional, licensing schemes for adult entertainment establishments must contain sufficient procedural safeguards. (*Freedman v. Maryland* (1965) 380 U.S. 51, 58–60 [13 L.Ed.2d 649, 85 S.Ct. 734]; *Essence, Inc. v. City of Federal Heights, supra,* 285 F.3d 1272, 1289–1290; *Fly Fish, Inc. v. City of Cocoa Beach* (11th Cir. 2003) 337 F.3d 1301, 1313; *Deja Vu of Cincinnati v. Union Tp. Bd. of Trustees* (6th Cir. 2005) 411 F.3d 777, 786.) If a licensing scheme meets the procedural requirements, then it is analyzed to determine whether it is a constitutional time, place, and manner restriction. (Hatch, *Keep on Rockin' in the Free World: A First Amendment Analysis of Entertainment Permit Schemes* (2003) 26 Colum. J.L. & Arts 313, 320–321; *Broadway Books, Inc. v. Roberts* (D.Tenn. 1986) 642 F.Supp. 486, 490.)

Prior restraints must be distinguished from subsequent punishments. (*Alexander v. United States, supra,* 509 U.S. at pp. 553–554.) Thus, an individual may be punished for distributing obscene materials even though the punishment may affect the individual's future protected speech. (*Id.* at p. 555; see also *City of Paducah v. Investment Entertainment, Inc.* (6th Cir. 1986) 791 F.2d 463, 469.) A bookstore may be closed under a nuisance statute if the owner has permitted it to be used for illicit sexual activity. (*Arcara v. Cloud Books, Inc.* (1986) 478 U.S. 697 [92 L.Ed.2d 568, 106 S.Ct. 3172] (*Arcara*).) In *Arcara,* where the court upheld the closure of a bookstore under a nuisance statute, the court rejected an argument the closure order was an unconstitutional prior restraint, explaining: "[t]he order would impose no restraint at all on the dissemination of particular materials, since respondents are free to carry on their bookselling business at another location, even if such locations are difficult to find. Second, the closure order sought would not be imposed on the basis of an advance determination that the distribution of particular materials is prohibited—indeed, the imposition of the closure order has nothing to do with any expressive conduct at all."[2] (*Id.* at p. 706, fn. 2.) The court emphasized "the closure sanction was directed at unlawful conduct having nothing to do with books or other expressive activity. Bookselling in an

---

[2] Krontz seizes on the language in *Arcara* noting the closure order did not prevent the respondents from selling books at another location and ignores the language explaining the closure order was not a prior restraint because it is not imposed on the basis of an advance determination that the activity is not protected by the First Amendment and "has nothing to do with any expressive conduct at all." (*Arcara, supra,* 478 U.S. at p. 706, fn. 2.)

establishment used for prostitution does not confer First Amendment coverage to defeat a valid statute aimed at penalizing and terminating illegal uses of premises." (*Id.* at p. 707.) Similarly, nude dancing in an establishment where Krontz allowed violations of valid regulations (the no-touch and six-foot rules) does not confer First Amendment coverage to defeat the regulations, which are aimed at penalizing and terminating the illegal conduct, not the expressive activity, on the premises.

An adult entertainment license may be constitutionally revoked when the licensee has violated valid provisions of a licensing ordinance. (*Genusa v. City of Peoria, supra,* 619 F.2d 1203, 1220; *LLEH, Inc. v. Wichita County* (5th Cir. 2002) 289 F.3d 358, 370 (*LLEH I*); *Tily B., Inc. v. City of Newport Beach, supra,* 69 Cal.App.4th 1, 25–26 [upholding revocation provisions applicable to adult entertainment business and rejecting as "extreme, unsupported, and incorrect" the position of the nude entertainment establishment that "the First Amendment prohibits revocation of its permits"]; *Schultz v. City of Cumberland, supra,* 228 F.3d 831, 853 ["The government may regulate the conditions under which operators and performers may stage adult entertainment, and in accordance, it may withhold or revoke a license pending compliance with legitimate time, place or manner requirements"]; *Admiral Theatre v. City of Chicago* (D.Ill. 1993) 832 F.Supp. 1195, 1205 ["a prohibition on future protected speech as a punishment for past speech that has been adjudicated to be illegal" is constitutionally permissible (italics omitted)]; *Barry v. City of Oceanside* (1980) 107 Cal.App.3d 257, 264 [165 Cal.Rptr. 697] [a municipality may deny a license to an adult entertainment business as a public nuisance if it describes with certainty what constitutes a public nuisance].) Suspending a license as a sanction for violating regulations furthers the government interest in obtaining compliance with the regulations. (See *Millennium Rests. Group, Inc. v. City of Dallas* (2002) 191 F.Supp.2d 802, 808 (*Millennium*), noting regulation in that case failed to "further the governmental interest of assuring law abiding licensees" because no showing of the licensee's knowledge, culpable state of mind or even negligence was required before suspension or revocation of the license; *City of Elko v. Abed* (Minn.Ct.App. 2004) 677 N.W.2d 455, 465–466, upholding denial of an adult entertainment license for specified periods of time to persons convicted of enumerated sex offenses and distinguishing cases involving motion picture theaters and bookstores on the basis nude dancing receives a lesser degree of First Amendment protection.)

Krontz relies on *Vance v. Universal Amusement Co.* (1980) 445 U.S. 308 [63 L.Ed.2d 413, 100 S.Ct. 1156] (*Vance*) for the proposition "government efforts to preclude someone from engaging in constitutionally protected activity because of previous illegal activity have been held to be impermissible prior restraints." *Vance* does not support this proposition. The question presented in *Vance* was whether a Texas public nuisance statute was

unconstitutional because it authorized a prior restraint of indefinite duration on the exhibition of films that had not been fully adjudicated to be obscene and without any guarantee of prompt judicial review of a preliminary finding of probable obscenity. (*Id*. at pp. 309, 316–317.) The Supreme Court found the Texas statute lacked the necessary procedural safeguards, in particular a prompt judicial determination of obscenity. In contrast here, Krontz does not challenge the adequacy of the procedural safeguards and at issue here is the imposition of a sanction after a finding Krontz had violated regulations and had prompt judicial determination of the violations. (See *LLEH I, supra,* 289 F.3d 358, 370, distinguishing the Fifth Circuit's decision [*Universal Amusement Co., Inc. v. Vance* (5th Cir. 1978) 587 F.2d 159] which was affirmed in *Vance* on the basis, inter alia, that case involved an injunction prior to the determination of a violation while *LLEH I* involved license revocation after a violation had been determined to have occurred.)

Krontz also misplaces reliance on *Millennium, supra,* 191 F.Supp.2d 802. He states the court in *Millennium* "permanently enjoined enforcement of a Dallas ordinance that authorized the revocation of a nude entertainment business license based on past dance performances that crossed the line from lawful to unlawful." He quotes the following language from *Millennium*: "The continuing validity of the Fifth Circuit's decision in *Vance* and its relevance to erotic dancing was expressly acknowledged last year in Chief Judge Buchmeyer's opinion in *LLEH II; supra,* 121 F.Supp.2d 513 . . . [(*LLEH II*)], which struck down an injunction provision in a local ordinance governing erotic dancing on the authority of *Vance*, on the ground that it would constitute 'an unconstitutional prior restraint of free expression entitled to protection under the First Amendment.' " (*Millennium, supra,* at p. 807, fn. 6.)

The actual holding in *Millennium* was that the ordinance was unconstitutional because the government could revoke the license without a showing of knowledge, culpable state of mind or even negligence on the part of the license holder as to two convictions of its employees for public lewdness occurring over a period of a year. The court concluded "the strict liability feature of the ordinance is constitutionally suspect because it does not relate to or further the governmental interest of assuring law abiding licensees." (*Millennium, supra,* 191 F.Supp.2d at p. 808.) The *Millennium* court did not hold that a nude entertainment business license could not be revoked based on past conduct. Indeed, the opinion suggests that if the Dallas ordinance had required a culpable state of mind of the business owner, the license revocation provision would have been upheld.[3]

---

[3] We also note the *Millennium* court's reliance on *LLEH II, supra,* 121 F.Supp.2d 513 was misplaced since this case was substantially reversed by the Court of Appeals in *LLEH I, supra,* 289 F.3d 358. On appeal, the Court of Appeals in *LLEH I* held the injunction provision in the

■ As we pointed out above, Krontz does not dispute he violated valid regulations relating to his permit (the no-touch or six-foot rule). Nor does he challenge the ordinance as being void for vagueness or lacking necessary procedural safeguards.[4] In other words, Krontz's challenge is not to a prior restraint but to a punishment. We reject Krontz's characterization of the suspension as an unconstitutional prior restraint.

### (B)   Time, Place and Manner Restriction

Krontz contends the regulation, to the extent it allows the suspension of a permit for a nude entertainment establishment, is an invalid time, place or manner regulation.

■ The constitutional analysis of regulations that impact expressive activity differ depending on whether the regulation is content based or content neutral; for content-based regulations the courts apply a strict scrutiny level of review while the courts apply an intermediate level of scrutiny for content neutral regulations. (*Turner Broadcasting System, Inc. v. FCC* (1994) 512 U.S. 622, 642 [129 L.Ed.2d 497, 114 S.Ct. 2445] (*Turner*).) "Deciding whether a particular regulation is content based or content neutral is not always a simple task." (*Ibid.*) The "principal inquiry in determining content neutrality . . . is whether the government has adopted a regulation of speech because of [agreement or] disagreement with the message it conveys." (*Ward v. Rock Against Racism* (1989) 491 U.S. 781, 791 [105 L.Ed.2d 661, 109 S.Ct. 2746].) "The purpose, or justification, of a regulation will often be evident on its face." (*Turner, supra,* at p. 642.) "As a general rule, laws that by their terms distinguish favored speech from disfavored speech on the basis of the ideas or views expressed are content-based. . . . By contrast, laws that confer benefits

---

Dallas ordinance was not overbroad, rejecting the district court's rationale the provision was unconstitutional because it authorized a suit to enjoin protected activity. (*Id.* at p. 370.) The appellate court explained the injunctive provision was permissible because it authorized suits to enjoin *violations* of constitutionally permissible regulations (including a six-foot rule). (*Ibid.*) The appellate court distinguished the case from *Universal Amusement Co., Inc. v. Vance, supra,* 587 F.2d 159 which involved an injunction prior to a determination the violation had occurred.

[4] In his reply brief, Krontz states "[Municipal Code] section 33.0403 affords the chief of police unrestrained discretion as to the sanction to impose for a regulatory violation" and notes "one defining element of an invalid prior restraint is the unbridled discretion vested in the decision maker as to whether to grant or deny the license." Contrary to Krontz's argument, the chief of police does not have unrestrained discretion to suspend a license. License suspension may occur only if the permittee allows a violation of applicable laws and regulations. Krontz makes no claim that the regulations themselves are vague or fail to give notice of the applicable standards and thereby vest too much discretion in the chief of police. Further, the regulations provide procedural safeguards such as opportunities for a hearing and judicial review before the suspension will actually be imposed. (Mun. Code, §§ 33.0501, subd. (a), 33.0503, subd. (f), 33.0507, subds. (d), (e).) The suspension here has not yet been imposed.

or impose burdens on speech without reference to the ideas or views expressed are in most instances content neutral." (*Id.* at p. 643, citations omitted.)

Municipal Code section 33.0403 is content neutral on its face. Section 33.0403 applies to any businesses that are required to have a permit, including those not afforded any First Amendment protection, such as auto dismantlers and pawn brokers. There is no language in the section referring to ideas, views, or the content of expressive activity; section 33.0403 provides for suspension of a permit if a permitee violates any law or regulation pertaining to the permitted business.

When a regulation is content neutral, a restriction on expressive activity will be found to be valid if: (1) the regulation is within the power of the government to enact; (2) it furthers an important or substantial governmental interest; (3) the government interest is unrelated to the suppression of free speech; and (4) the restriction is no greater than is essential to the furtherance of the governmental interest. (*United States v. O'Brien* (1968) 391 U.S. 367, 377 [20 L.Ed.2d 672, 88 S.Ct. 1673]; *Department of Alcoholic Beverage Control v. Alcoholic Beverage Control Appeals Bd.* (2002) 99 Cal.App.4th 880, 890 [121 Cal.Rptr.2d 729]; *Tily B., Inc. v. City of Newport Beach, supra,* 69 Cal.App.4th 1, 21; Johnson, *Fourth Annual Review of Gender and Sexuality: Constitutional Law Chapter: Nude Dancing* (2002) 4 Geo. J. Gender & L. 169, 170–171; *Threesome Entertainment v. Strittmather* (D.Ohio 1998) 4 F.Supp.2d 710, 720.) This four-part test is often referred to as the "*O'Brien* test." (*Millennium, supra,* 191 F.Supp.2d 802, 808; *Morris v. Municipal Court, supra,* 32 Cal.3d 553, 559.)[5]

Krontz concedes "an ordinance authorizing permit suspension . . . is within the City's constitutional police power and, presumably, it could further the governmental interest of gaining compliance with various predicate regulations." Thus, Krontz concedes the first two prongs of the *O'Brien* test are met.

Krontz contends the third prong—the government interest is unrelated to the suppression of free speech—is not met because the underlying governmental interest is obtaining compliance with the "predicate regulations that . . . directly suppress specific elements of that protected expression." We disagree. The governmental interest of obtaining compliance with laws and

---

[5] The United States Supreme Court in *City of Renton v. Playtime Theatres, Inc.* (1986) 475 U.S. 41, 50 [89 L.Ed.2d 29, 106 S.Ct. 925] (*Renton*), which reviewed the validity of a zoning ordinance restricting the location of adult entertainment establishments, used a three-part test, examining whether the regulation: (1) served a substantial governmental interest, (2) was narrowly tailored to serve that interest, and (3) did not unreasonably limit alternatives of communication. The *O'Brien* and *Renton* tests, in our view, are substantially similar. (See *People v. Library One, Inc.* (1991) 229 Cal.App.3d 973, 984, fn. 4 [280 Cal.Rptr. 400].)

regulations relating to the permitted business is unrelated to the suppression of speech since Municipal Code section 33.0403 applies to all businesses requiring a permit, not just those engaged in expression protected by the First Amendment and it applies to any violation, not just those related to expressive activity. Further, the underlying violations here—the no-touch and six-foot rules—do not involve protected activity. The rules are justified by the governmental interest in reducing the negative secondary effects of adult-oriented businesses, including criminal activity such as prostitution, pandering, drug dealing, and violence against persons and property in the areas surrounding an adult-oriented business (see Mun. Ordinance, § 0-18876, amending ch. III, art. 3, div. 36 to Mun. Code). The courts have held this is a governmental interest that is unrelated to the suppression of speech. (See, e.g., *Kev, Inc. v. Kitsap County* (9th Cir. 1986) 793 F.2d 1053, 1061–1062, *Hang On, Inc. v. City of Arlington, supra,* 65 F.3d 1248, 1254, *Threesome Entertainment v. Strittmather, supra,* 4 F.Supp.2d 710, 720; *Tily B., Inc. v. City of Newport Beach, supra,* 69 Cal.App.4th 1, 22.)

■ The fourth prong of the *O'Brien* test requires the restriction to be no greater than necessary to further the governmental interest. Krontz argues the regulation is invalid "because it suppresses all expression so its impact on protected expressive activity is far more than 'incidental,' " that is, during the period of suspension, no protected expressive conduct (nude dancing) may occur at Déjà Vu. He suggests the City was limited to imposing a fine. However, the Supreme Court has rejected the argument that a " 'challenged regulation is unnecessary, and hence invalid, because there are less speech-restrictive alternatives . . . .' " (*Ward v. Rock Against Racism, supra,* 491 U.S. 781, 798; see also *United States v. Albertini* (1985) 472 U.S. 675, 689 [86 L.Ed.2d 536, 105 S.Ct. 2897] ["Nor are such [content-neutral] regulations invalid simply because there is some imaginable alternative that might be less burdensome on speech"]; see also *City of National City v. Wiener, supra,* 3 Cal.4th 832, 842 [" '[s]o long as the means chosen are not substantially broader than necessary to achieve the government's interest, . . . the regulation will not be invalid simply because a court concludes that the government's interest could be adequately served by some less-speech-restrictive alternative' "].) The requirement that a regulation be narrowly tailored "is satisfied so long as the government's asserted interest 'would be achieved less effectively absent the regulation.' " (*Dream Palace v. County of Maricopa* (9th Cir. 2004) 384 F.3d 990, 1016; see *Ward v. Rock Against Racism, supra,* 491 U.S. 781, 799.)

Here, the governmental interest behind Municipal Code section 33.0403 is to ensure the permitee complies with applicable laws and regulations. A regulatory sanction of suspension certainly furthers the goal of obtaining compliance with applicable laws and regulations and that goal would be

achieved less effectively absent the availability of the sanction. The suspension imposed here was of a very limited duration. We also note a fine could be less effective at achieving the government's goal of compliance with regulations since a business owner could pass along the fine to his or her customers as a cost of doing business and continue to engage in violations. Additionally, while Krontz's business may be closed as a venue for nude entertainment during the period of suspension, the closure does not prohibit nude entertainment at other venues or prohibit the dancers from performing their expressive activities at those other venues.

We conclude the City's regulation allowing suspension of a permit is a valid time, place, or manner restriction.

### (C)   Injunction

Alternatively, Krontz objects to the suspension of his license as being an improper injunction limiting future activity that is protected by the First Amendment. We find no merit to this argument. At issue here is not an injunction but an ordinance that is subject to analysis as a content-neutral time, place, and manner restriction. (See *Madsen v. Women's Health Center, Inc.* (1994) 512 U.S. 753, 764–765 [129 L.Ed.2d 593, 114 S.Ct. 2516].) As we have explained above, the regulation is valid and constitutional.

### (D)   California Constitution

Krontz contends the California Constitution's liberty of speech clause (Cal. Const. art. I, § 2(a)) provides broader protection than the First Amendment. He relies on *Morris v. Municipal Court, supra,* 32 Cal.3d 553, 562, footnote 8, where the court stated, "[E]ven a performance that involves the barest minimum of protected expression is entitled to *full* First Amendment protection."

The California Supreme Court in *Morris,* however, was only interpreting the First Amendment based on then-existing United States Supreme Court precedent. Since the *Morris* decision, the United States Supreme Court and the cases interpreting its decisions have repeatedly stated nude entertainment receives a lesser degree of First Amendment protection than other speech; that is, although receiving First Amendment protection, nude entertainment "falls only within the outer ambit of the First Amendment's protection." (*Erie, supra,* 529 U.S. at p. 289; see *Barnes, supra,* 501 U.S. at p. 566 ["[N]ude dancing of the kind sought to be performed here is expressive conduct within the outer perimeters of the First Amendment, though we view it as only marginally so"].) Had *Morris* been decided today, we have no doubt that it

would have recognized the limitations on the First Amendment protection extended by the United States Supreme Court.

■ Further, in *Los Angeles Alliance for Survival v. City of Los Angeles* (2000) 22 Cal.4th 352 [93 Cal.Rptr.2d 1, 993 P.2d 334], the California Supreme Court stated: "Our formulation of the time, place, and manner test [used in California] was 'fashioned from a long line of United States Supreme Court cases' [citation], and . . . analysis of speech regulation under [California Constitution] article I, section 2(a), employs 'time, place and manner restrictions . . . *measured by federal constitutional standards.*' " (*Id.* at p. 364, fn. 7, italics added.)

We reject Krontz's arguments the California Constitution grants broader protection and that the regulation here is unconstitutional under the California Constitution.

## II

### Due Process

Krontz contends the City's permit suspension process violates due process because he received untimely notice of the charges. He contends "the inordinate delay in affording him an opportunity to appear before an impartial finder-of-fact to contest those charges, prejudiced his ability to defend the allegations."

The facts, as found by the hearing officer, indicate the police department did not routinely report violations to the establishment or the entertainer on the day they occurred. Most violations were reported to Krontz within two weeks, although there was one delay of more than 30 days and another delay of 70 days between the date of the violation and notice to Krontz. The hearing officer noted Krontz "took prompt action after each written notification" of violations, including terminating dancers, terminating a manager, posting signs, requiring dancers to sign an acknowledgement of the operating regulations for nude dancers, and reconfiguring an area of the establishment. The hearing officer noted the delays between the violations and notice to Krontz made it difficult for Krontz to investigate the violation and take corrective action.

However, the hearing officer also found the violations continued over a 10-month period, Krontz could have taken additional steps to control the entertainers' behavior, and there was no evidence Krontz or his employees ever intervened or took disciplinary or corrective action except after Krontz received a written warning. The hearing officer concluded that when the

police were not present Krontz "tolerated entertainers 'crossing the line' " and that "tolerating the violations was the norm."

■ Due process requires that when the government seeks to deprive a person of property, it must provide the individual with notice and an opportunity to be heard. (*Petrillo v. Bay Area Rapid Transit Dist.* (1988) 197 Cal.App.3d 798, 808 [243 Cal.Rptr. 74].) When an individual claims governmental delay in imposing sanctions has violated the guarantee of due process, the individual bears the burden of establishing actual prejudice. (See *People v. Belton* (1992) 6 Cal.App.4th 1425, 1433 [8 Cal.Rptr.2d 669].)

Here, the suspension was not imposed based on a discrete violation but on persistent violations occurring over an extended period. Krontz had ample notice of repeated violations at Déjà Vu. The City sent him warning letters in May, August and October 2001, each detailing multiple violations. Police officers also met with Krontz's representative and attorney on October 26, 2001, where it informed them of additional violations, and sent Krontz a written summary of the meeting and the additional violations. The City did not seek suspension until January 17, 2002, after additional violations had occurred. The additional violations had occurred within two weeks of the notice. This record shows Krontz was provided with ample notice of the numerous violations at Déjà Vu occurring over a 10-month period and notice that his license could be suspended if the violations persisted. Krontz had the opportunity to challenge the existence of the violations following the issuance of each warning letter and at the October 26 meeting. (See Mun. Code, § 33.0404, subd. (b) ["Whenever a written warning is issued, the permittee shall be afforded an opportunity to meet with the Chief of Police regarding the written warning" (italics omitted)].) We find no merit to Krontz's argument that the January 2002 notice of suspension provided the first opportunity to challenge the alleged violations.

Krontz has failed to show he suffered any actual prejudice. He merely points to the delays. However, most of the violations were reported to Krontz within two weeks, and the permit suspension was not based on the existence of any single violation but on a persistent pattern of violations showing Krontz tolerated violations within his establishment. Any individual delays do not tend to undermine the notice Krontz received of ongoing violations. Nor did Krontz present any evidence showing that any delays resulted in the loss of witnesses or other relevant evidence. We conclude there was no denial of due process.

## DISPOSITION

The judgment is affirmed. Respondents are awarded costs on appeal.

Huffman, J., and Nares, J., concurred.

Appellant's petition for review by the Supreme Court was denied May 10, 2006, S142214. George, C. J., did not participate therein.